■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIE JUNE WHIPSET, JR., Appellant. — Judgment unanimously modified, on the law, and, as modified, affirmed; Callahan, J., not participating. Memorandum: Defendant Willie June Whipset was found guilty after a jury trial of two counts of robbery in the second degree and two counts of grand larceny in the second degree arising from a robbery of a dairy in the City of Rochester on two occasions less than a week apart. The judgment of conviction must be modified by reversing the conviction for grand larceny in the third degree since under the circumstances in this case. it is a lesser included offense of robbery in the second degree *(People v Acevedo,* 40 NY2d 701, 706-707; see, also, *People v Johnson,* 39 NY2d 364, 370; *People v Davis,* 73 AD2d 628; CPL 470.15, subd 2, par [b]). The main issue before us is the pretrial identification made by the store clerk of the defendant by means of a photograph and the fact of such identification at the trial. At the trial the store clerk, Kenneth Rose, testified that he was working at the dairy on the afternoon of July 31, 1975 when Whipset and an unidentified accomplice forced him to give them the contents of the cash drawer. Although he had seen Whipset in the neighborhood on other occasions, he did not know Whipset's real name. On August 4, 1975 Whipset and his partner returned to the dairy and repeated their crime, this time threatening to kill Rose for reporting the first robbery to the police. The next day Rose identified Whipset's photograph from an "I.D./M.O." file containing over 150 photographs. Rose's testimony was corroborated by the testimony of two teenagers, Charles Jacobs and James Smith, who were near Weber's Dairy on August 4, 1975, and saw Whipset and another man standing across the street. Smith claimed he heard one of them say "We are going to hit this place." He also said he later saw "June Bug" and "Jerry" running from the dairy. Defendants contend that the trial court improperly allowed Kenneth Rose to testify that he had made a prior photographic identification of Whipset. The record reveals, however, that the fact that Rose had made a photo identification was not elicited by the People on Rose's direct testimony, but, rather, was brought out on cross-examination as follows: "Q. Did you tell the police that you knew who did the robbery? A. Yes. Q. Both of them 'June'? A. Yes. Q. You did? When? A. The second time. Q. The second time? You mean you told them after you looked at photographs, isn't that true. A. Yes." CPL 60.30 permits a witness who observed the defendant at the scene of the crime to testify as to a subsequent identification of the defendant as the person in question providing the subsequent identification is constitutionally valid. Section 393-b of the former Code of Criminal Procedure, the predecesor of CPL 60.30, was enacted to overcome the rule that a witness was not permitted to bolster his testimony by showing that he had made the same statement on a prior occasion (Richardson, Evidence [Prince, 10th ed], § 521, pp 513-514). In interpreting this section (Code Crim Pro, § 393-b) the Court of Appeals held that this section relaxed the long-held rule that it was reversible error to admit testimony even by the witness himself that he had previously identified an accused, but that the rule was relaxed "only to the extent of permitting a witness to testify to a previous identification by himself of the defendant in the flesh" *(People v Caserta,* 19 NY2d 18, 21). The court continued (p 21): "As for previous identification from photographs, not only is it readily possible to distort pictures as affecting identity, but also where the identification is from photographs in the rogues' gallery

(even though the name or number on the picture has been exscinded) the inference to the jury is obvious that the person has been in trouble with the law before. Such an inference is accentuated where the defendant fails to take the witness stand". Thus, it would have been error for the trial court to permit Rose to testify on direct examination that he had previously identified the defendant by means of photographs (see, e.g., *People v Lindsay,* 42 NY2d 9, 12; *People v Caserta, supra,* pp 20-21; *People v Favreau,* 77 AD2d 696). Here the prosecution did not elicit the fact that Rose had made a photographic identification (see *People v Brown,* 62 AD2d 715, 725, affd 48 NY2d 921); rather, such evidence is attributable to defendant's election to reveal to the jury that Rose had viewed photographs. If this was error, it was harmless error. Here, unlike the situation in *Caserta* and, more recently, *People v Lindsay (supra),* Kenneth Rose had seen defendant on other occasions and even knew that his nickname was "June". Under these circumstances, we do not believe that the jury was swayed by the statement of the prime prosecution witness that he had told the police after viewing the photographs that defendant robbed the dairy store. That same witness made a positive in-court identification that was corroborated by the testimony of two other prosecution witnesses. We conclude, therefore, that there is no significant probability that the jury would have acquitted the defendant had it not been for Rose's statement *(People v Crimmins,* 36 NY2d 230, 242). (Appeal from judgment of Monroe Supreme Court — robbery, second degree, and grand larceny, third degree.) Present — Cardamone, J.P., Hancock, Jr., Callahan, Denman and Schnepp, JJ.