OPINION OF THE COURT
Cornelius J. O’Brien, J.
This is a dual motion on behalf of the defendants which seeks an order suppressing identification testimony pursu *27 ant to CPL 710.20 and further seeks dismissal of the indictment pursuant to CPL 210.35 (subd 5).
This matter was originally before the court on a Wade hearing. During the course of the hearing, it became apparent that the sole means of identification of all three defendants as the perpetrators of the crime was by photographic identification.
It is conceded by the People that, except at the Wade hearing before this court, and an aborted Wade hearing held before the Honorable Benjamin Glass on February 18, 1982, no corporeal identification was ever made as to any of the defendants by any of the witnesses to the crimes charged. In light of this testimony (discussed in more detail infra), the court, sua sponte, examined the Grand Jury minutes, in camera, to determine the mode of identification before that body, and requested the defendants’ attorneys to file papers relative to the instant motion. The District Attorney was given time to respond. (People v Vega, 80 AD2d 867; People v Kovzelove, 72 AD2d 608.)
A reading of the Grand Jury minutes indicates that each witness who testified was asked, in substance, “Did there come a time when you made an identification of the person who committed the crime?” and each witness answered in the affirmative. The Grand Jury was never told that, in fact, each witness had identified only a photograph of a defendant.
The crimes for which these defendants stand indicted are particularly vicious, arising out of an incident which occurred on September 28, 1981 at about 12:30 p.m. On that date, four males, two armed with shotguns, entered a two-family dwelling in South Ozone Park, Queens, and forced four adults and two children to lie on the floor. Two of the males ransacked the house, a third stood watch over the victims, while a fourth went to the apartment of the upstairs tenant and brought her, at gunpoint, to the downstairs apartment. The entire incident lasted approximately one-half hour.
The next day, two of the complainants, Mrs. Anna Bradley and her daughter, Lynnette, went to the “Miraquick” facility at the 112th Precinct to view photographs. The *28 women were seated at the same table and given trays of photos to look through. Lynnette Bradley selected a photo of defendant Brewster as being one of the men in the kitchen and showed the photo to her mother, who agreed with the identification. Anna Bradley identified a photo of defendant Johnson and showed it to the daughter. The daughter concurred with the mother’s identification of Johnson.
On October 2, 1981, Denise Mullins, the occupant of the upstairs apartment, went to the “Miraquick” facility and, after viewing several hundred photographs, identified a photo of defendant Alfonso. (It was stipulated by the People that both defendant Brewster’s and Johnson’s photographs were contained in the array shown to Miss Mullins.) Miss Mullins was unable to identify either defendant Brewster or Johnson in court.
Neither Anna Bradley nor Lynnette Bradley were able to identify defendant Alfonso, either by photograph or in court.
Assistant District Attorney Anthony Communiello testified that he was given the case for the purpose of conducting a Wade hearing before the Honorable Benjamin Glass on February 18, 1982. In preparation for the hearing, Mr. Communiello showed each witness a photograph to ask whether, in fact, that was the photo she had selected at “Miraquick”. He was unable to state with certainty whether he showed the single photos to all three witnesses, or to two out of the three. Miss Mullins testified that she was not shown photos before the previous hearing.
Two of the defendants, Tromaine Johnson and Leonard Brewster, claim to have documented alibis for their whereabouts on the date and time in question. Mr. Brewster was allegedly at a clinic in Far Rockaway where he signed in and out, while Mr. Johnson was at an employment agency in New Hyde Park. A letter from that agency is contained in the court file. All three defendants have expressed a desire to submit to polygraph tests.
The pertinent statutes in this case with regard to the issue of the manner of presentation to the Grand Jury are CPL 210.35 (subd 5), 190.65 (subd 1), 190.30, and 60.30.
*29 They are set forth in pertinent parts as follows:
CPL 210.35 (subd 5) provides: “A grand jury proceeding is defective within the meaning of paragraph (c) of subdivision one of section 210.20 when: ***
“5. The proceeding otherwise fails to conform to the requirements of article one hundred ninety to such degree that the integrity thereof is impaired and prejudice to the defendant may result.”
CPL 190.65 (subd 1) provides: “Subject to the rules prescribing the kinds of offenses which may be charged in an indictment, a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.” (Emphasis added.)
CPL 190.30 (subd 1) provides: “1. Except as otherwise provided in this section, the provisions of article sixty governing rules of evidence and related matters with respect to criminal proceedings in general, are, where appropriate, applicable to grand jury proceedings.”
CPL 60.30 provides: “In any criminal proceeding in which the defendant’s commission of an offense is in issue, a witness who testifies that (a) he observed the person claimed by the people to be the defendant either at the time and place of the commission of the offense or upon some other occasion relevant to the case, and (b) on the basis of present recollection, the defendant is the person in question and (c) on a subsequent occasion he observed the defendant, under circumstances consistent with such rights as an accused person may derive under the constitution of this state or of the United States, and then also recognized him as the same person whom he had observed on the first or incriminating occasion, may, in addition to making an identification of the defendant at the criminal proceeding on the basis of present recollection as the person whom he observed on the first or incriminating occasion, also describe his previous recognition of the defendant and testify that the person whom he observed on such second occasion is the same person whom he had observed *30 on the first or incriminating occasion. Such testimony constitutes evidence in chief.”
It has long been the law in this State that a witness may not, on the People’s direct case, refer to a previous photographic identification of a defendant. (People v Caserta, 19 NY2d 18; People v Baker, 23 NY2d 307; People v Griffin, 29 NY2d 91.)
A witness is allowed, as part of the People’s direct case, to bolster an in-court identification by testifying that some time after the initial incident he observed the accused person under circumstances not violative of his constitutional rights “and then also recognized him as the same person whom he had observed on the first or incriminating occasion”. (CPL 60.30.)
By statute (CPL 190.30, subd 1) the provisions of CPL article 60 governing rules of evidence in criminal proceedings are specifically applicable to Grand Jury proceedings.[1] It therefore follows that a witness in a Grand Jury proceeding may not be permitted to testify to a photographic identification of a defendant made subsequent to the initial incident, unless there is either a statutory or case law exception. There is no statutory exception contained in the Criminal Procedure Law. And under People v Hagedorny (272 App Div 830), a case cited with approval on several occasions by the Court of Appeals, it has been held that the “identification” demanded by section 393-b of the Code of Criminal Procedure, the predecessor of CPL 60.30, is a corporeal identification. As stated in People v Caserta (19 NY2d 18, 21, supra), “Prior to the adoption of section 393-b of the Code of Criminal Procedure in 1927, the rule had long been that it was reversible error even to admit testimony by the witness himself that he had previously identified an accused in person (People v. Jung Hing, 212 N. Y. 393, 401; People v. De Martini, 213 N. Y. 203). The cases *31 consistently hold that this established rule is relaxed by section 393-b of the Code of Criminal Procedure only to the extent of permitting a witness to testify to a previous identification by himself of the defendant in the flesh (.People v. Cioffi, supra, p. 73).”
The language of CPL 60.30, insofar as pertinent here, is substantially identical to the language of section 393-b of the Code of Criminal Procedure.[2]
It would therefore appear clear that the People may not in the Grand Jury elicit testimony that a witness made a subsequent photographic identification of a defendant. It is also clear that such evidence would be incompetent under the reasoning of the Court of Appeals in People v Jung Hing (212 NY 393, 403, 405).[3]
Under CPL 190.65 (subd 1), an indictment must be grounded upon competent admissible evidence.
In People v Oakley (28 NY2d 309), the Court of Appeals considered whether an indictment founded on prima facie, competent admissible evidence should be dismissed where that evidence is later found to be inadmissible. In sustaining that indictment, the court distinguished between evidence which is incompetent and evidence which is prima facie competent, rendered inadmissible only by extrinsic subsequent proof. (People v Oakley, supra, p 312.)
Since in this case the evidence of identification before the Grand Jury was prima facie incompetent, it is clearly distinguishable from Oakley (supra).
The People, apparently aware of the prohibition pertaining to photograph identifications, in effect, sought to substitute a superior form of identification (i.e., corporeal) for one that is both inferior and inadmissible. While ostensibly averting prejudice to the defendants, the People, in actuality, severely prejudiced them by giving the Grand Jury the *32 impression that actual corporeal identifications had taken place.
The reason for the error made by the prosecution is undoubtedly the mistaken assumption that photographic bolstering is impermissible only because it alerts the members of the petit or Grand Jury to the fact that a defendant has a record. In actuality, the chief reason why such evidence is excluded in this jurisdiction is because the courts of this State have historically held, most correctly in this court’s opinion, that such evidence is unreliable.
As stated by the Court of Appeals in People v Caserta (19 NY2d 18, 21, supra), “The reasons for this rule are well understood. One of the most stubborn problems in the administration of the criminal law is to establish identity by the testimony of witnesses to whom an accused was previously unknown, from quick observation under stress or when, as here, there was no particular reason to note the person’s identity. Where the opportunity for observation is limited and the opportunity and ability of the witness to identify the defendant is questionable, it is all too easy to bolster such testimony by calling a succession of witnesses who swear that they saw and heard him identify the same person upon previous occasions. This tends to give the idea to a jury that there is an impressive amount of testimony to identification when such is really not the fact. As for previous identification from photographs, not only is it readily possible to distort pictures as affecting identity, but also where the identification is from photographs in the rogues’ gallery (even though the name or number on the picture has been exscinded) the inference to the jury is obvious that the person has been in trouble with the law before.” (See, also, Matter of James H., 34 NY2d 814.)
The People’s error in this case is violative of CPL 210.35 in that the Grand Jury proceedings failed to conform to the provision of CPL article 190 to such a degree that the integrity of the proceedings was impaired to the prejudice of the defendants. It would seem to be beyond argument that, in effect, to inform the Grand Jury that there has been an in-the-flesh corporeal identification of a defendant where such is not the case, and where there has, in fact, only been an incompetent inadmissible photo *33 graphic identification, violates the integrity of the Grand Jury proceedings. The fact that this was done with the best of intentions makes no difference.
The People essentially argue that it would be impractical to hold lineups due to the volume of their caseload.. They further maintain that civilian co-operation would be curtailed if victims of crimes were subjected to an additional identification procedure.
This court is well aware of the difficulties experienced by the District Attorney in attempting to wrestle with the problems of the appalling caseload caused by the burgeoning crime rate in Queens County. In no sense does this court intend to imply that the actions of the District Attorney were motivated by anything other than a sincere effort to efficiently cope with this enormous task.
The court is also not unmindful of the possible ramifications of this decision. The manner in which this case was presented to the Grand Jury is evidently not an isolated incident, but, rather, appears to be standard operating procedure in those cases where the defendant is not previously known to the complainant and where the arrest is made some time after the incident.[4] It is precisely these cases, however, which are fraught with the possibility of mistake. (Simmons v United States, 390 US 377.)
The fact of the matter is, however, that in the usual “one-on-one” identification case or in cases such as the one before the court (i.e., the typical robbery case), the People have little chance of ultimately prevailing unless they are able to introduce bolstering evidence of a lineup identification. On the other hand, when there is a conviction, since a jury trial can ofttimes be chancey, there is a tremendous risk of the conviction of innocent people. The benefits ensuing from an efficient and expedient operation in the Grand Jury are far outweighed by the deleterious effect at trial and, the resultant enhancement of the likelihood that *34 the guilty defendant may be acquitted and the innocent convicted.
As stated in People v Lindsay (42 NY2d 9, 13), “Perhaps the photographic array was more convenient than a full corporeal lineup, but, as noted, it is settled that the convenience of the People cannot outweigh the prejudice to the defendant inherent in such proof (People v Caserta, supra)”
With regard to the Wadeissue, the court finds as follows:
All of the complaining witnesses had ample time to observe the defendants, in view of the relatively long period which elapsed during the commission of the crime. The “Miraquick” showings of the photographs to the witnesses were fairly conducted, except that Anna Bradley was allowed to pick out Brewster after consulting with her daughter, Lynnette, and Lynnette selected Johnson after consulting with her mother, Anna. While obviously this procedure should not be followed, the court finds that under these circumstances, the in-court identifications were grounded on a sufficient independent source and were not tainted by the faulty police procedure. (See People v Brown, 20 NY2d 238; People v Gonzalez, 27 NY2d 53.)
Similarly, the showing of individual photos to Anna and Lynnette . Bradley by the Assistant District Attorney immediately prior to the previous Wade hearing was improper. However, each of the witnesses testified that her ability to make an in-court identification of the defendants was unaffected by the showing of the photos and the court, having questioned the witnesses in this regard (cf. People v Gonzalez, supra, p 59 [dissent of Fuld, Ch. J.]), is convinced that this was so.
Finally, the People contend that the motion to dismiss the indictment is not properly before this court, having been previously raised by omnibus motion before the Honorable Thomas Agresta.
An examination of the motion papers indicates that the omnibus motion contained reference in the notice of motion to CPL 210.35. However, the affidavit in support of that motion failed to set forth factual allegations as required by CPL 210.45, relative to that branch of the motion.
*35 It is clear, therefore, that that portion of the defendants’ motion was not passed upon by Justice Agresta. The facts giving rise to this motion became apparent only because they were adduced during the Wade hearing.
Moreover, even if the motion had been previously raised, this court, in the interest of justice, and for good cause shown, would entertain the motion.
CPL 255.20 limits the time for a defendant to make pretrial motions to a period of 45 days after arraignment. CPL 255.20 (subd 3) provides, however, that: “Notwithstanding the provisions of subdivisions one and two hereof, the court must entertain and decide on its merits, at any time before the end of the trial, any appropriate pre-trial motion based upon grounds of which the defendant could not, with due diligence, have been previously aware, or which, for other good cause, could not reasonably have been raised within the period specified in subdivision one of this section or included within the single set of motion papers as required by subdivision two. Any other pre-trial motion made after the forty-five day period may be summarily denied, but the court, in the interest of justice, and for good cause shown, may, in its discretion, at any time before sentence, entertain and dispose of the motion on the merits.”
Accordingly, for the reasons stated above, the defendants’ motion to suppress identification testimony is denied. However, the motion to dismiss the indictment charging the defendants with the crimes of robbery in the first degree (five counts); criminal use of a firearm in the first degree (five counts); robbery in the second degree (five counts); criminal use of a firearm in the second degree (five counts); and burglary in the first degree (two counts), as to all three defendants is granted.

. Significantly, under section 248 of the Code of Criminal Procedure there was a less stringent standard governing evidence that could be presented to the Grand Jury. That statute read, in pertinent part, as follows:
“In the investigation of a charge, for the purpose of indictment, the grand jury can receive no other evidence than,
“1. Such as is given by witnesses produced and sworn before them, or furnished by legal documentary evidence”.

. Section 393-b of the Code of Criminal Procedure provided as follows: “When identification of any person is in issue, a witness who has on a previous occasion identified such person may testify to such previous identification.”

. While People v Jung Hing (supra), decided by the Court of Appeals in 1914, concerned presection 393-b corporeal bolstering and not photographic bolstering, the reasoning on the question of the competency of the evidence would be the same.

. Unlike those eases involving insufficiency of Grand Jury evidence which may be cured by a conviction based on sufficient trial evidence (see CPL 210.30, subd 6), it would appear that defective Grand Jury proceedings might not be so immunized from appellate review. (Cf. People v Nitzberg, 289 NY 523; People v Jackson, 18 NY2d 516.)