THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LEONARD BREWSTER, TROMAINE JOHNSON and FELIX ALFONSO, Respondents.

Second Department, March 12, 1984

**APPEARANCES OF COUNSEL**

*John J. Santucci, District Attorney* (*Richard G. Denzer* of counsel), for appellant.

*John F. Clennan* for Leonard Brewster, respondent.

*Joseph F. DeFelice* for Felix Alfonso, respondent.

**OPINION OF THE COURT**

BRACKEN, J.

This appeal presents for resolution the question of whether an indictment must be dismissed where the evidence of identity before the Grand Jury was based solely upon prior photographic identifications, and where the grand jurors were not informed of that fact.

The essential facts are not in dispute. As reflected in the opinion of Criminal Term (*People v Brewster,* 115 Misc 2d 26), no corporeal identification was ever made of any of the defendants by the witnesses in this case. The witnesses, however, did identify defendants from photographs at the police station within several days after the crime. Each witness thereafter testified before the Grand Jury and

"was asked, in substance, 'Did there come a time when you made an identification of the person who committed the crime?'" (*People v Brewster, supra,* p 27.) Each witness answered affirmatively, but the Grand Jury was never informed that the witnesses had identified only photographs of the defendants. At a subsequent *Wade* hearing, the testimony disclosed that the sole means of identification of the defendants had been from photographs. Defendants thereupon moved to suppress the identification testimony (CPL 710.20, subd 6) and to dismiss the indictment (CPL 210.35, subd 5). Criminal Term denied the motion to suppress but granted the motion to dismiss, holding that evidence of identity derived from a photographic identification was incompetent, and that introduction of such evidence without any explanation to the grand jurors as to its source impaired the integrity of the Grand Jury and resulted in prejudice to the defendants.

For the reasons that follow, the order must be reversed insofar as appealed from, on the law, the motion to dismiss must be denied, and the indictment reinstated.

While both the United States Constitution and the New York State Constitution require the indictment of a Grand Jury as a prerequisite to a felony prosecution (US Const, 5th Amdt; NY Const, art I, § 6), neither prescribes the kind or quantum of evidence upon which a Grand Jury may act (*Costello v United States,* 350 US 359; *Matter of Miranda v Isseks,* 41 AD2d 176). In fact, an indictment based entirely upon hearsay or other incompetent evidence is sufficient for constitutional purposes (*Costello v United States, supra*). Thus, resolution of the issue before us turns entirely upon construction of the various New York statutes governing the procedures of the Grand Jury and the rules of evidence in criminal proceedings.

The relevant statutes pertaining to Grand Jury practice are found in CPL article 190. CPL 190.65 (subd 1) sets forth the standard of proof required to support an indictment of the Grand Jury: "Subject to the rules prescribing the kinds of offenses which may be charged in an indictment, a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense * * * and (b)

competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense". The terms "legally sufficient evidence" and "reasonable cause to believe that such person committed such offense" are further defined in CPL 70.10 as follows:

"Standards of proof; definitions of terms

"The following definitions are applicable to this chapter:

"1. 'Legally sufficient evidence' means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof; except that such evidence is not legally sufficient when corroboration required by law is absent.

"2. 'Reasonable cause to believe that a person has committed an offense' exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this chapter, such apparently reliable evidence may include or consist of hearsay".

Reading these sections together, an indictment is authorized where (1) *competent* evidence, accepted as true, establishes each and every element of the offense charged and defendant's commission thereof, and (2) *competent and admissible* evidence which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that defendant committed it.

Clearly, evidence of identity derived from a photographic identification may establish, if accepted as true, defendant's commission of the offense charged, and may furnish reasonable cause to believe that defendant committed the offense. Thus, such evidence may be viewed as legally sufficient to support an indictment under CPL 190.65 (subd 1) *if* such evidence is *competent* and *admissible.*

The term "competent evidence" is defined as relevant evidence which is admissible *in a particular action,* i.e.,

relevant evidence which is not subject to the operation of any exclusionary rule (Richardson, Evidence [Prince, 10th ed], § 4; see, also, 1 Bender, NY Evidence, § 1). Thus, for our purposes "competent" evidence is, by definition, "admissible" evidence.

To determine whether evidence of identity based upon a photographic identification is "competent" and "admissible" for Grand Jury purposes within the meaning of CPL 190.65, we must next examine CPL 190.30, which prescribes the rules of evidence applicable to Grand Jury proceedings. CPL 190.30 (subd 1) provides: *"Except as otherwise provided in this section,* the provisions of article sixty governing rules of evidence and related matters with respect to criminal proceedings in general, are, *where appropriate,* applicable to grand jury proceedings" (emphasis supplied). Those exceptions as alluded to in subdivision 1 are contained in subdivisions 2 and 3 and allow the reception of scientific reports and affidavits as prima facie evidence of the facts contained therein.

The language of subdivision 1 makes the provisions of CPL article 60 applicable to Grand Jury proceedings, subject to two separate and distinct qualifications: "[e]xcept as otherwise provided in this section" and "where appropriate". The first qualification ("[e]xcept as otherwise provided in this section") establishes that the rules of evidence governing criminal proceedings contained in CPL article 60 shall apply to Grand Jury proceedings except to the extent that CPL 190.30 (subds 2, 3) (proof by report and/or affidavit) provide otherwise. The second qualification ("where appropriate") establishes that even where the provisions of CPL 190.30 do not pre-empt the general evidentiary rules of CPL article 60, the rules of CPL article 60 shall only be applied to Grand Jury proceedings insofar as it is appropriate to do so. We must therefore consider the general rules of CPL article 60 governing admissibility of identification evidence in criminal proceedings, and determine the extent to which it is "appropriate" to apply those rules to proceedings before the Grand Jury.

CPL 60.30 governs the extent to which a witness in a criminal proceeding who had identified a defendant may testify to a previous identification:

"Rules of evidence; identification by means of previous recognition, in addition to present identification

"In any criminal proceeding in which the defendant's commission of an offense is in issue, a witness who testifies that (a) he observed the person claimed by the people to be the defendant either at the time and place of the commission of the offense or upon some other occasion relevant to the case, and (b) on the basis of present recollection, the defendant is the person in question and (c) on a subsequent occasion he observed the defendant, under circumstances consistent with such rights as an accused person may derive under the constitution of this state or of the United States, and then also recognized him as the same person whom he had observed on the first or incriminating occasion, may, in addition to making an identification of the defendant at the criminal proceeding on the basis of present recollection as the person whom he observed on the first or incriminating occasion, also describe his previous recognition of the defendant and testify that the person whom he observed on such second occasion is the same person whom he had observed on the first or incriminating occasion. Such testimony constitutes evidence in chief".

This section was enacted in 1970 (L 1970, ch 996, § 1, amd by L 1977, ch 479, § 2) and was derived from section 393-b of the Code of Criminal Procedure. Prior to the enactment of section 393-b in 1927 (L 1927, ch 336), it had been held to be reversible error to admit testimony of a witness that he had previously identified the accused, regardless of whether the prior identification had been corporeal or photographic, since such testimony constituted a prior consistent statement and thus hearsay (see, e.g., *People v Jung Hing,* 212 NY 393). Section 393-b was enacted in 1927 and provided as follows: "§ 393-b. Testimony of previous identification. When identification of any person is in issue, a witness who has on a previous occasion identified such person may testify to such previous identification". The statute as enacted was construed to have relaxed the prior rule only to the extent of permitting a witness to testify as to a previous *corporeal* identification made by the witness himself (see, e.g., *People v Spinello,* 303 NY 193). Thus, under section 393-b, testimony concerning a previ-

ous photographic identification continued to be precluded, not because it was incompetent hearsay, but because of two principal policy grounds. First, photographs are subject to ready distortion affecting the accuracy of an identification. Second, reference to photographs creates the prejudicial inference that the police had a "mug shot" of the defendant and therefore he must have had a prior arrest record (*People v Caserta,* 19 NY2d 18; see, also, *People v Christman,* 23 NY2d 429; *People v Baker,* 23 NY2d 307; *People v Wright,* 21 NY2d 1011; *People v Cioffi,* 1 NY2d 70; *People v Hagedorny,* 272 App Div 830). The prohibition against the admission of evidence of photographic identifications has continued after enactment of CPL 60.30 (*People v Lindsay,* 42 NY2d 9; *People v Johnson,* 32 NY2d 814; *People v Griffin,* 29 NY2d 91; see, also, Sobel, Eyewitness Identification [2d ed], § 4.3, subd [c]).

Our examination of the history of the rule and of the policies justifying its existence leads us to conclude that it is simply not appropriate to apply the rule to proceedings before the Grand Jury (CPL 190.30, subd 1) and that evidence of identity derived from a photographic identification is therefore competent and admissible for the purpose of supporting an indictment (CPL 190.65, subd 1).

Initially, the rule heretofore has been applied to the introduction of such evidence at trial only[1], and the policies articulated by the courts as supporting the rule simply do not justify its extension to the Grand Jury. Since a conviction by verdict after trial must be supported by proof beyond a reasonable doubt (CPL 70.20), the importance of the rule at trial is apparent: the trier of fact should not be permitted to convict based upon a mistaken identification and should not be permitted to infer that the accused had a prior arrest record (*People v Caserta, supra*). However, the Grand Jury is an accusatory body whose function is to determine only whether sufficient evidence exists to hold the accused for trial (*People v Calbud, Inc.,* 49 NY2d 389,

---

1. Actually, the rule prohibiting evidence of photographic identification is not absolute, even at trial. Such evidence is admissible if adduced by the defense (*People v Brown,* 62 AD2d 715, affd 48 NY2d 921; *People v Whipset,* 80 AD2d 986), or if introduced by the prosecution to rebut a claim that the witness' identification of the defendant at trial is a recent fabrication (*People v Lindsay,* 42 NY2d 9; *People v Baker,* 23 NY2d 307). It may be argued that since the defendant can introduce such evidence, it is therefore to be considered competent and admissible (*People v White,* 115 Misc 2d 304, 305).

394) and *not* whether there exists proof beyond a reasonable doubt to support a conviction (*People v Porter*, 75 AD2d 901). Under these circumstances, the dangers justifying the rule prohibiting evidence of photographic identification are greatly diminished, since a defendant may still challenge the circumstances, accuracy and veracity of an identification at a *Wade* hearing (see *United States v Wade*, 388 US 218) and/or at trial.

In fact, the Court of Appeals has recognized the reduced risk of permitting the use before the Grand Jury of identification evidence which would be inadmissible at trial. In *People v Oakley* (28 NY2d 309), the issue was whether an indictment was invalid where the identification evidence before the Grand Jury had been based upon a showup, and where that evidence had been properly suppressed as unduly suggestive at a subsequent *Wade* hearing. The court held that because the identification evidence was prima facie competent until found to be otherwise at the postindictment suppression hearing, the evidence before the Grand Jury was legally sufficient[2]. The court distinguished between evidence which is incompetent when presented to the Grand Jury and evidence which is prima facie competent until rendered incompetent by subsequent extrinsic proof at a suppression hearing. For purposes of the Grand Jury, the latter was held to supply a necessary element of a prima facie case. The court stated: "Nor is it essential, as the prosecutor believes, that to save the indictment the victim must be able to testify to a proper in-court identification. If on the trial there had been no reliable identification or inculpation from some source, defendant would, of course, be acquitted, by direction of a verdict if need be. There would be no need circuitously to dismiss the indictment for insufficiency of evidence before the Grand Jury. If on the trial, however, there had been other reliable proof of identification or inculpation, then of course it would make no difference how the trial proof compared with the Grand Jury proof. It would suffice that the indictment had performed its office and had been obtained on what was at the

---

2. The *Oakley* (*People v Oakley*, 28 NY2d 309) rule has been extended by this court to cover admissions and physical evidence as well (*People v Vega*, 80 AD2d 867; *People v Mauceri*, 74 AD2d 833).

time prima facie legally competent evidence rendered inadmissible only by subsequent challenge and other proof" (*People v Oakley, supra,* p 313).

In our view, the rationale of *Oakley* (*supra*) lends support to our conclusion that photographic identification evidence is competent and admissible at the Grand Jury level. Indeed, it would be incongruous to permit an indictment based upon a blatantly suggestive corporeal identification to stand, while requiring dismissal of an indictment based on a photographic identification without any regard to its fairness.

Further, the law permits the use of photographic identification evidence in other accusatory phases of criminal prosecutions. For example, probable cause for a valid arrest may be provided by a photographic identification, even if that identification would not be admissible at trial (*People v Nelson,* 79 AD2d 171, cert den *sub nom. Usher v New York,* 454 US 869). It follows that, at least in cases of prosecution by information, an accusation based upon a photographic identification will be sufficient to require an accused to stand trial. That being the case, we perceive no basis for requiring a more restrictive standard in cases of prosecution by indictment.

Moreover, the Court of Appeals has implicitly approved of the use of photographic identification evidence before the Grand Jury. In *People v Baker* (23 NY2d 307, *supra*), a witness identified defendant *at trial* as one of the persons she had seen running from the crime scene. She also testified *at trial* that she had identified a photograph of defendant *before the Grand Jury*. The court held that the latter testimony was admissible at trial; because it had been brought out on cross-examination that the witness had testified before the Grand Jury that she did not recognize some of the persons she had seen running from the scene, the prosecution could properly bring out on redirect that portion of her Grand Jury testimony in which she had identified defendant photographically (under the rule that a party may always read another portion of a statement used for impeachment to correct a false impression and to show that there was, in fact, no contradiction). In so holding, the court did not question the propriety of the

introduction of photographic identification evidence before the Grand Jury in the first instance. If the court had in fact viewed admission of such evidence before the Grand Jury as improper, it is unlikely that the use of such Grand Jury testimony would have been sustained at trial.

In any case, the New York prohibition against use of photographic identification evidence at trial is the minority rule (Sobel, Eyewitness Identification [2d ed], § 4.3, subd [c]), and its continued vitality in this State is in question. The New York State Law Revision Commission's proposed Code of Evidence was submitted to the 1982 session of the Legislature and is presently under consideration. Under section 803 (subd [a], par [3]) of the proposed code, a witness would be permitted to testify that he had previously identified a person from a photograph. The Law Revision Commission's Comment on this section states in pertinent part: "Restriction of the paragraph to corporeal identification is unwarranted since no reason appears for differentiating between prior photographic or sketch and corporeal identifications" (NY Law Rev Comm, A Code of Evidence for the State of NY [1982], Comment, p 185).

Finally, strong policy considerations militate against an extension of the banning of photographic identification evidence to Grand Jury proceedings. Such an extension would have the effect of requiring a corporeal identification procedure (e.g., lineup) in every felony prosecution prior to Grand Jury presentation (except in those cases where the defendant was previously known to the victim or witnesses). In view of the ever-increasing case loads of prosecutors throughout the State, this requirement would prove burdensome and perhaps unmanageable, particularly where expeditious Grand Jury action is required to keep a defendant in custody (CPL 180.80). Moreover, imposition of such a requirement would effectively preclude Grand Jury action in all cases in which the accused was not in custody and not otherwise available for corporeal identification (*People v Ball,* 89 AD2d 353, 355; *People v White,* 115 Misc 2d 304, 306). We are mindful also of the additional burden that would be placed upon victims and witnesses were they required to view a lineup in all cases prior to appearing before the Grand Jury. In the

absence of any meaningful protection to the accused, the imposition of such a burden is to be avoided (see *United States v Hasting,* 461 US 499, __, 103 S Ct 1974, 1979; *Morris v Slappy,* 461 US 1, __, 103 S Ct 1610, 1617-1618).

In sum, we conclude that the rule precluding use of photographic identification evidence, which has heretofore been applied only at trial, ought not be extended to the proceedings of the Grand Jury, as the policies supporting such a rule are far outweighed by the policies favoring use of such evidence before that body. Accordingly, we hold that the exclusion of photographic identification evidence from Grand Jury proceedings is not appropriate, and that use of such evidence before the Grand Jury is therefore permitted under CPL 190.30. That being the case, photographic identification evidence is both competent and admissible within the meaning of CPL 190.65 (subd 1) and is legally sufficient to support an indictment of the Grand Jury.

In light of our holding, it cannot be said that the Grand Jury proceeding in the case at bar failed to conform to the requirements of CPL article 190 to such a degree that the integrity of the proceeding was impaired (CPL 210.35, subd 5). The prosecutor complied with CPL article 190 by presenting witnesses who testified that they had identified defendants as the persons who had committed the crimes. This testimony was competent; it established, if believed, the fact of defendants' commission of those crimes; and it established reasonable cause to believe that defendants had committed such crimes (CPL 190.30, subd 1; 190.65, subd 1). This is all that the statute requires, and the fact that the Grand Jury was not apprised of the nature of the identification is not a controlling fact. To read into CPL article 190 a requirement that the prosecutor inform the Grand Jury of the basis for a witness' identification would necessarily impose upon the Grand Jury the obligation of determining the reliability and accuracy of the particular identification. This, in turn, would necessitate a determination of whether the photographic identification procedure was unduly suggestive and, if so, whether there existed an independent basis for the identification. Witnesses before the Grand Jury are not subjected to cross-

examination, and in the absence of complex instructions from the prosecutor regarding the principles of law applicable to eyewitness identification, the Grand Jury is ill-suited to make such determinations. As we have previously noted, the Grand Jury's function is to determine only whether sufficient evidence exists to hold the accused for trial (CPL 190.65, subd 1; *People v Calbud, Inc.*, 49 NY2d 389, 394, *supra*), and determinations regarding the reliability of eyewitness identifications, involving questions of law and fact, are better left to the court presiding at the *Wade* hearing, and, ultimately, to the trier of fact. Accordingly, the order dismissing the indictment upon the ground that the Grand Jury proceeding was defective (CPL 210.20, subd 1, par [c]) must be reversed and the indictment reinstated.

LAZER, J. P. (dissenting). Seeking to sustain the dismissal of their indictment defendants contend that the identification testimony supporting it was inadmissible because it derived from a photographic display and not a corporeal viewing. In reinstating the indictment, the majority holds that the long-standing proscription against the use of photographic identification evidence at trials does not extend into the Grand Jury room. I disagree.

Defendants Leonard Brewster, Tromaine Johnson and Felix Alfonso were indicted for multiple counts of robbery in the first degree and criminal use of a firearm in the first degree. During the Grand Jury proceeding, the victims of the crimes responded affirmatively when asked whether they had identified the individuals who committed the crimes. The Grand Jury was not informed, however, that these identifications were based solely on pictures of the defendants that had been shown to the witnesses by the police and that there had never been a corporeal identification of defendants. When the nature of the identifications was ultimately revealed during a *Wade* hearing, defendants moved to dismiss the indictment pursuant to CPL 210.35 (subd 5), alleging violation of the integrity of the Grand Jury proceedings. Criminal Term (O'BRIEN, J.), granted the motion and dismissed the indictment, holding that identification evidence derived from photographs is inadmissible in Grand Jury proceedings, that an indictment based on such inadmissible evidence is insufficient

and that the failure to inform the Grand Jury of the nature of the identifications violated the integrity of the Grand Jury proceedings (*People v Brewster,* 115 Misc 2d 26).

While recognizing that an indictment must be based upon competent and admissible evidence (CPL 190.65, subd 1) and that postcrime photographic identification evidence is incompetent at a trial (CPL 60.30; *People v Lindsay,* 42 NY2d 9), the majority concludes that such evidence is admissible before a Grand Jury because the Criminal Procedure Law mandate for competent and admissible evidence may be relaxed where indictment proceedings are involved. The majority supports this proposition by arguing that the indictment process and the convenience of witnesses will be served if the competency rules are eased in the Grand Jury room. However desirable such a proposition may be, I see nothing in the CPL or decisional law that either authorizes a lesser degree of competence for evidence adduced in the Grand Jury room or permits the offering of photographic identification evidence in that room while barring it as incompetent at trial.

The dispute focuses on the meanings of CPL articles 60 and 190 — the former entitled "Rules of Evidence and Related Matters" and the latter "The Grand Jury and Its Proceedings". CPL 190.65 (subd 1) prescribes the evidentiary and proof standards in Grand Jury proceedings as follows: "[A] grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense * * * and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense". The enactment of CPL 190.65 neither intended nor created any substantive change in prior existing law (see NY Temporary Comm on Rev of Penal Law and Criminal Code, Proposed New York Criminal Procedure Law [1967], Staff Comment, pp 163-164). The predecessor provision — section 251 of the Code of Criminal Procedure — required an indictment to be based upon competent evidence which unexplained or uncontradicted would warrant a conviction after trial (see *People v Oakley,* 28 NY2d 309; *People v Jackson,* 18 NY2d 516; *People v Leary,* 305 NY 793). For an indictment to be valid it still

must be based on evidence that would warrant a conviction after trial if uncontroverted (see, e.g., *People v Dunleavy,* 41 AD2d 717, affd 33 NY2d 573; *People v Alaxanian,* 89 AD2d 700; *People v Leonardo,* 89 AD2d 214).

The rule that an indictment must be supported by sufficient evidence does not flow from constitutional mandate and it differs from the Federal standard permitting indictments based entirely on hearsay or other evidence incompetent at a trial (see *Costello v United States,* 350 US 359; see, also, *Matter of Miranda v Isseks,* 41 AD2d 176). The policy purpose of this State's sterner standard is to relieve prospective defendants of the burdens of trials if the probabilities of conviction on the evidence submitted to the Grand Jury are unlikely or impossible (see Note, 1963 Wash U LQ 102). "The purpose and function of the indictment is to determine whether there is sufficient competent evidence to warrant conducting a trial" (*People v Rallo,* 46 AD2d 518, 527, affd 39 NY2d 217). The New York rule also is intended to prevent prosecutorial abuse in the use of inadmissible evidence (see Arenella, Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication, 78 Mich L Rev 463, 562).

Here, it is undisputed that the challenged indictment cannot survive without evidence supporting the identification of the defendants. Since that supporting evidence stemmed from the viewing of photographs after the crime, we turn to whether such evidence is competent. Prior to the enactment of the Code of Criminal Procedure in 1927, it was impermissible to bolster a witness' in-court identification by any evidence of earlier postcrime identifications, whether based on photographs or corporeal viewing (see *People v Jung Hing,* 212 NY 393). Section 393-b of the Code of Criminal Procedure modified this prohibition by permitting a witness to testify that he "has on a previous occasion identified such person". Judicial gloss subsequently limited the "previous occasion" identification to one that was corporeal in nature; testimony concerning photographic identifications remained prohibited (see *People v Griffin,* 29 NY2d 91; *People v Baker,* 23 NY2d 307; *People v Caserta,* 19 NY2d 18; *People v Cioffi,* 1 NY2d 70; *People v Hagedorny,* 272 App Div 830).

This judicial proscription remained unaltered by the enactment of the CPL. Although CPL 60.30 permits a witness to testify that he has on a previous occasion identified the defendant from observing him after the crime, in 1977 the Court of Appeals reaffirmed the bar against photographic identification evidence in *People v Lindsay* (42 NY2d 9, 12) and referred to the issue as "settled". Despite a recommendation from the New York State Law Revision Commission that the bar be lifted (see NY Law Rev Comm, A Code of Evidence for the State of NY [1982], § 803, subd [a], par [3]), the Legislature has yet to act on the code and the requirement that identification evidence offered at a trial relate to a corporeal and not a photographic viewing persists.

The rules excluding photographic identifications is grounded on the concept that it is readily possible to distort pictures as affecting identity and that the use of mug shots or rogues' gallery photos improperly informs the jury that the defendant has a prior criminal record (see *People v Caserta,* 19 NY2d 18, 21, *supra*). In one commentator's view, the possibilities of suggestion are greater in photographic identifications than in lineups since the police can manipulate the choice of photographs, the order in which they are presented and the time in which the witness can study each picture. Furthermore, during a photographic display the accused is not present to observe the procedure and detect instances of possible suggestion (see Note, 34 Ohio St LJ 928; see, also, Comment, 43 NYU L Rev 1019). Sound or not, New York's rigid stand against use of photographic identification evidence is a minority position. Most jurisdictions deem prior photographic identification evidence sufficiently reliable because the problem of suggestiveness can be ameliorated by subjecting the witness to cross-examination and by excluding suggestive procedures after pretrial hearings (see Sobel, Eyewitness Identification [2d ed], § 4.3, subd [c]; 1 Wharton, Criminal Evidence [13th ed], pp 360-361; Ann., 30 ALR3d 908; Mauet, Prior Identifications in Criminal Cases: Hearsay and Confrontation Issues, 24 Ariz L Rev 29; see, also, NY Law Rev Comm, A Code of Evidence for the State of NY [1982], Comment, p 185).

Despite its settled nature, the People argue that the prohibitory rule lacks logic and that the degree of reliability of any given evidence involves its weight rather than its competency. But CPL 60.30 was enacted with legislative awareness that the provision it replaced in the Code of Criminal Procedure had been interpreted as excluding photographic identification evidence. Since CPL 60.30 contained no substantive change from the earlier statutory language, it is apparent that the Legislature intended the prohibition to remain (see *Engle v Talarico,* 33 NY2d 237, 242). Considering its recent re-endorsement by the Court of Appeals, there is no basis for extinction of the proscriptive rule at this time.

While expressing doubts as to the "vitality" of the rule (p 142), the majority agrees that postcrime photographic identification evidence is inadmissible at a trial but asserts that it is admissible in Grand Jury proceedings because trials and indictment procedures differ in purpose, function and over-all operation. To support this contention, the majority fastens on the language of CPL 190.30 (subd 1), which declares: "[T]he provisions of article sixty, governing rules of evidence and related matters with respect to criminal proceedings in general, are, *where appropriate,* applicable to grand jury proceedings" (emphasis supplied). The majority takes the Legislature's use of the words "where appropriate" to mean that while photographic identification evidence is not competent at a trial, it is "appropriate" for use in the Grand Jury room.

Analysis of the merits of this position leads first to the Staff Comments to the CPL which provide insight as to the meaning of "where appropriate". In the Comment to CPL article 60, the drafters of the statute declare that "[u]pon the theory that the various types of criminal proceedings * * * are all subject to a basic evidentiary pattern, the proposed Criminal Procedure Law prescribes its rules of evidence in the 'General Provisions,' thus according them across-the-board application, subject, of course, to qualification by the specialized provisions governing procedure in particular areas" (NY Temporary Comm on Rev of Penal Law and Criminal Code, Proposed New York Criminal Procedure Law [1967], Staff Comment, p 64). In a further

Comment to CPL 190.30 (subd 1), the section that contains the "where appropriate" language, the drafters remark that "[s]ubdivision 1 merely calls attention to the fact that the rules of evidence governing criminal proceedings in general * * * are applicable to grand jury proceedings except where a different rule is *expressly predicated* in this section" (Proposed New York Criminal Procedure Law [1967], *op cit.,* p 149; emphasis supplied).

Thus, if there is a difference in the rules relating to the admissibility of evidence at a trial and in the Grand Jury room, it must be "expressly predicated" on a "specialized" provision of the CPL. The rules of evidence contained in CPL article 60 are therefore "appropriate" for Grand Jury proceedings unless a provision of article 190 specifically provides otherwise (see Note, 61 Wash U LQ 191, 211 [New York Rule — blanket proclamation that trial rules of evidence apply in Grand Jury proceedings]). An example of an express departure from CPL article 60 rules of evidence is to be found in CPL 190.50 which restricts defendants from calling witnesses at a Grand Jury proceeding even though CPL 60.15 permits defendants to call and examine witnesses at trials. Notable by its absence in CPL article 190 is any provision which would specifically permit the use of photographic identification evidence. While the majority asserts that it is incongruous to ban photographic identification evidence in the Grand Jury room while permitting corporeal identification testimony that may have suggestive origins, the Legislature and the Court of Appeals seem unmoved by the incongruity and it is apparent that a belief in the basic unreliability of photographic identification evidence has led to its exclusion.

Nor can I agree with the majority's declaration (p 140), that in *People v Oakley* (28 NY2d 309, *supra*), "the Court of Appeals has recognized the reduced risk of permitting the use before the Grand Jury of identification evidence which would be inadmissible at trial". It is scarcely news that some evidence that is prima facie admissible may later become inadmissible by virtue of extrinsic proof. *Oakley* (*supra*), involved corporeal identification testimony that was competent when presented to the Grand Jury but later became inadmissible after a *Wade* hearing disclosed suggestiveness. The *Oakley* (*supra*) standard also applies to

confessions and physical evidence which may be competent when placed before the Grand Jury but which are suppressed after the indictment (see, e.g., *People v Vega,* 80 AD2d 867; *People v Mauceri,* 74 AD2d 833). Photographic identification evidence is incompetent from the outset, however, and it remains so.

I have difficulty in comprehending the majority's reliance on *People v Baker* (23 NY2d 307, *supra*), as "implicitly" approving the use of photographic identification evidence in the Grand Jury room. *Baker* (*supra,* p 324), restated the proscriptive rule and permitted testimony concerning an earlier photographic identification solely "to correct a false impression" created by defendant's efforts to impeach a prosecution witness. The effort to impeach thus opened the door to the otherwise forbidden evidence in the same way as a defendant who assails eyewitness identification testimony as a " 'recent fabrication' " opens the door to the admission of photographic identification evidence on rebuttal (*People v Coffey,* 11 NY2d 142, 145-146). Similarly, a defendant who elicits photographic identification evidence loses the right to exclude such evidence when the prosecutor subsequently offers it (*People v Brown,* 62 AD2d 715). What is involved in all the cited cases is a form of waiver. While the right to exclude incompetent evidence may be waived, in this case there was no waiver; the photographic identification testimony would be incompetent and inadmissible at defendants' trial and it was incompetent and inadmissible at the indictment proceeding (*People v Eckert,* 2 NY2d 126).

In a further effort to create a distinction between competency of evidence before Grand Juries and at trials, the majority notes that photographic identification testimony is admissible at suppression hearings and concludes therefore that it is also admissible in indictment proceedings because there can be no distinction between evidence sufficient to establish probable cause for an arrest and evidence necessary to indict and prosecute. It is true, of course, that probable cause for an arrest may be predicated upon a photographic identification made by a witness to a crime (*People v Nelson,* 79 AD2d 171, cert den *sub nom. Usher v New York,* 454 US 869), but that does not support the

notion that such evidence is admissible before a Grand Jury. By equating the proof necessary to establish probable cause with the proof necessary to indict, the majority disregards the highly significant differences between the purposes of Grand Jury proceedings and probable cause hearings. Since part of the Grand Jury function is to screen factual guilt (*People v Rallo,* 46 AD2d 518, affd 39 NY2d 217, *supra;* Arenella, Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication, 78 Mich L Rev 463, 474), an indictment must be based upon legally sufficient evidence to establish that an accused committed a crime (CPL 190.65, subd 1; *People v Calbud, Inc.,* 49 NY2d 389, 394) and hearsay evidence is inadmissible (*People v Jackson,* 18 NY2d 516). But when an arrest is based upon a citizen's accusation of guilt, the issue at the suppression hearing is not factual guilt but whether the police were entitled to rely upon the accusation to justify their conduct (*People v Elwell,* 50 NY2d 231; *People v West,* 44 NY2d 656). For this reason, an arrest need not be based upon evidence which would be competent at trial (*Brinegar v United States,* 338 US 160, 172-173; *People v Coffey,* 12 NY2d 443, 452, cert den 376 US 916; 1 LaFave, Search and Seizure, § 3.2) and even hearsay inadmissible at the trial may be admitted at the suppression hearing (CPL 710.60, subd 4). At a suppression hearing a police officer's testimony concerning information furnished by a citizen does not run afoul of the hearsay rule because it is not offered for the truth of the charge but only to show that the information was given to the police (*People v Inman,* 80 AD2d 622; *People v Sanders,* 79 AD2d 688). In a Grand Jury proceeding, however, the issue is the truth of the charge and the identical hearsay information is inadmissible. The less restrictive evidentiary requirements at suppression hearings are thus irrelevant to the issues before us.

I am aware, of course, that the proscriptive rule creates substantial difficulties in the indictment of individuals who have not been available for lineups or for other corporeal viewing. Amelioration of these difficulties is, however, a matter for legislative redress since recent precedential authority indicates no change in the attitude of the Court

of Appeals toward photographic identification evidence. Thus, there is no warrant for this court to adopt a rule of necessity that would relax the legislative definition of competent evidence to ease prosecutorial burdens. On the law as it currently exists, the instant indictment was properly dismissed because of the incompetent identification evidence presented to the Grand Jury. In view of my conclusion, I find it pointless to ruminate on whether the failure to disclose the basis of the identification evidence would have impaired the integrity of the Grand Jury if the evidence were competent.

Accordingly, I vote to affirm dismissal of the indictment.

O'CONNOR and RUBIN, JJ., concur with BRACKEN, J.; LAZER, J. P., dissents and votes to affirm the order insofar as appealed from, with an opinion in which BROWN, J., concurs.

Order of the Supreme Court, Queens County, dated July 20, 1982, reversed insofar as appealed from, on the law, defendants' motion to dismiss the indictment denied, indictment reinstated, and matter remitted to Criminal Term for further proceedings.