■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH BROWN, Appellant. — Appeals by defendant from (1) a judgment (Indictment No. 166/78) of the Supreme Court, Richmond County (Bellard, J.), rendered January 12, 1979, convicting him of robbery in the second degree and grand larceny in the third degree, upon a jury verdict, and imposing sentence and (2) an amended judgment (Indictment No. 49/78) of the same court (Barlow, J.), rendered January 12, 1979, adjudicating him to be in violation of parole and imposing sentence. Amended judgment on Indictment No. 49/78 reversed, on the law, and matter remitted to the Supreme Court, Richmond County, for further proceedings consistent herewith. Judgment on Indictment No. 166/78 reversed, on the law, and as a matter of discretion in the interest of justice, and new trial ordered. Defendant's convictions arise out of the taking of $2 worth of food stamps from the complaining witness Kevin Burnside. Burnside testified that he was going shopping with his brother for his mother when he was stopped by a group of boys. Michael Price came up to him and asked him if he had any money. According to the complaining witness, the defendant came out from behind a building and asked the crowd, "What's going on?" When someone in the crowd responded, "He has money in his pocket", the defendant grabbed Burnside's arms and held them behind his back while Michael Price stood in front of him and took his food stamps. The boys then ran away. Twelve-year-old Bruce Lawrence was the only other eyewitness called to testify on behalf of the People. His testimony completely contradicted the testimony of the complaining witness. According to Lawrence, who was stand-

ing across the street from the incident, it was Michael Price and not the defendant who grabbed the complaining witness. The defendant was the individual who took the food stamps. Lawrence's testimony also contradicted that of the complaining witness regarding the number of people involved. Lawrence said there was no one else around, the complaining witness testified that a group of boys surrounded him. Furthermore, Lawrence testified that the incident took about 10 to 20 minutes while the complaining witness testified it took about 2 to 3 minutes. Despite the inconsistencies in the trial testimony, we are unable to conclude as a matter of law that the evidence of identification was legally insufficient to sustain defendant's conviction (see *People v McCann,* 90 AD2d 554; *People v Kidd,* 76 AD2d 665). Nevertheless, certain errors in the trial, when considered together and viewed in light of the conspicuous disparity in the testimony of the two eyewitnesses, persuade us that defendant was denied a fair trial. The testimony of Police Officer Franconeri, to the effect that he arrested the defendant pursuant to a conversation he had with the complaining witness, constituted improper bolstering (see *People v Johnson,* 57 NY2d 969; *People v Trowbridge,* 305 NY 471) which cannot be overlooked inasmuch as the evidence of identification was not "clear and strong" (see *People v Mobley,* 56 NY2d 584, 585). Furthermore, we find that the prosecutor acted improperly during his summation. Over vigorous and numerous objections by defense counsel and notwithstanding the trial court's admonition to the prosecutor to disregard defense counsel's opening statement, he continually commented upon defense counsel's failure to prove certain things he had mentioned in his opening statement. We have held in the past that such conduct is improper inasmuch as the prosecutor is, in effect, suggesting to the jury that the defendant had the burden of proving his innocence (see *People v Knatz,* 76 AD2d 889). We cannot say that the implications of the prosecutor's statements were erased from the minds of the jurors by the trial court's curative instructions in light of the prosecutor's persistent attempts to avoid the adverse rulings of the trial court. Thus, reversal is required despite the court's instructions (see *People v Perez,* 90 AD2d 468; *People v Lindo,* 85 AD2d 643, 644-645; *People v Mejias,* 72 AD2d 570, 571). In light of our reversal of defendant's convictions of Indictment No. 166/78, the amended judgment on Indictment No. 49/78, adjudicating defendant in violation of parole should be vacated and the matter remanded for a new hearing to determine whether the underlying facts, rather than the convictions themselves, support a finding of a probation violation. Titone, J. P., Lazer and Gibbons, JJ., concur.

Thompson, J., dissents and votes to affirm both judgments, with the following memorandum: Defendant stands convicted on Indictment No. 166/78 of robbery in the second degree and grand larceny in the third degree based upon an incident in which two perpetrators forcibly took food stamps from Kevin Burnside. One perpetrator held Burnside's arms while the second actor went through his pockets, I am in agreement with the majority that evidence of guilt beyond a reasonable doubt was adequately established at trial despite troubling conflicts in the stories of Burnside and Bruce Lawrence, a witness to the crime. Both witnesses unequivocally identified defendant as one of the two perpetrators, despite their inability to agree on whether he was the arm holder or the pocket searcher. Despite the absence of overwhelming proof of guilt, I am unable to vote for a reversal because I simply do not believe that defendant was deprived of a fair trial. There was no *Trowbridge* error in this case and the prosecutor's remarks were properly monitored by the court. Accordingly, I respectfully dissent. Burnside testified that four days after the crime he saw defendant in the lobby of a police building and informed Officer Franconeri of this. In his very brief testimony, Franconeri testified that he saw defendant in

the lobby, had a conversation with Burnside five minutes thereafter, and then arrested defendant. All of the foregoing was not objected to. This testimony was elicited solely to provide the jury with the background leading to defendant's arrest. Franconeri's testimony was in no way directed towards bolstering Burnside's previous identification testimony, and in essence simply repeated Burnside's already admitted testimony. Franconeri never even testified as to what Burnside told him. Defense counsel's own words best summarize the impact of Franconeri's testimony: "that the police officer merely testified relative to the fact that [defendant] was arrested. I submit that he didn't contribute anything really significant to this case." This case simply has nothing to do with the evils of improper bolstering, and *Trowbridge* is now being used in a situation in which its applicability has no basis in either logic or law. In his opening statement defense counsel stated that he would produce two witnesses who would testify that defendant was present at the scene but did not participate in the robbery. Defendant rested without presenting any witnesses. During the prosecutor's summation, the following transpired: "You heard a statement that proof was going to be given to you that Bruce Lawrence actually committed this crime. MR. BRENNAN [defense counsel]: Objection, Judge. THE COURT: Sustained. MR. BRENNAN: Defendant doesn't have to prove anything. THE COURT: Sustained. MR. O'SHEA [Assistant District Attorney]: You heard counsel's comments. THE COURT: Disregard the statement made by the district attorney, jurors. It is your recollection of the evidence that counts, and no one else's. MR. O'SHEA: You heard the opening statements. Hold me to my opening statement. Hold counsel to his opening statement. MR. BRENNAN: Objection, Judge. THE COURT: Sustained. MR. BRENNAN: I would ask for an instruction to the jury. THE COURT: Jurors, the defense doesn't have to prove anything. The People must prove the guilt of this defendant beyond a reasonable doubt. In my charge to you I will instruct you on the law. Disregard the statements made to you by the Assistant District Attorney, Mr. O'Shea. Remove it from your mind. MR. O'SHEA: Did you hear any evidence whatsoever, whatsoever that Bruce Lawrence perpetrated this crime? MR. BRENNAN: Objection, Judge. THE COURT: Sustained. MR. BRENNAN: I ask for an instruction. THE COURT: Again, disregard anything the district attorney says about anything that may reflect upon the defense. The defense, again, has nothing to prove in this case. It is for the district attorney to prove this defendant guilty beyond a reasonable doubt, by the direct evidence of the district attorney. MR. BRENNAN: Judge, I would ask the court to instruct the district attorney to not comment on my opening statement, which is not evidence. THE COURT: Yes, Mr. O'Shea, disregard the opening statement made by Mr. Brennan, please." In a situation in which objections were immediately sustained and perfect curative instructions were promptly given, and in the absence of a motion for a mistrial, I am at a complete loss to understand why the ill-advised and overzealous comments of the prosecutor constitutes reversible error. In summary, defendant received a fair trial, if not a perfect one. Accordingly, I vote to affirm the judgments.