THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEPHEN CRUZ, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Rigler, J.), rendered November 20, 1981, convicting him of murder in the second degree and robbery in the first degree, upon a jury verdict, and imposing sentence. ¶ Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. ¶ Defendant Stephen Cruz and his codefendant Jose Medina were indicted for murder in the second degree, robbery in the first degree, criminal possession of a weapon in the second degree and criminal use of a firearm in the first degree and the two were tried together. The prosecutor, during his opening address to the jury, made extensive reference to the expected testimony of one David Ruiz as follows: ¶ "You'll hear testimony from David Ruiz, who will tell you he knew both the defendants in this case, Stephen Cruz and Jose Medina, by their street names, Pee Wee and Hounddog. He'll describe to you Jose Medina as the individual he knows as Hounddog, and he'll describe Stephen Cruz to you as the individual he knows as Pee Wee. ¶ "I'll tell you — or he'll tell you that he was coming down Woodbine Avenue, Brooklyn, approaching Knickerbocker, and that some 40 or 50 feet from the corner he heard a shot. He ducked behind a van and looked out, looked down at the corner, and he'll tell you that there he observed the Defendants, Jose Medina and Stephen Cruz, one holding a gun leaning over the body, touching the pockets and so on. ¶ "He'll tell you he saw them

place the gun inside a bag and then turn around and run down Woodbine pass [*sic*] the location on the opposite side of the street, pass [*sic*] the location where he was, towards Wilson Avenue. That is along Woodbine through Knicker-bocker, down to the next corner, which is Wilson. ¶ "He will identify them to you in Court. He will point them out to you, and he will tell you that they were the persons who robbed and killed De Jesus Gonzalez on August 11, 1980". ¶ During the course of the trial the prosecutor realized that he was having a problem locating David Ruiz, and in an apparent attempt to avoid a missing witness charge, the prosecutor elicited testimony from Detective Dominick Filippone that Filippone had attempted to bring Ruiz to court but had been unable to contact him. Filippone testified that he had visited Ruiz' home, spoke with his common-law wife, visited his aunt's house and visited his sister's house, all to no avail. David Ruiz never testified at the trial. ¶ In *People v De Tore* (34 NY2d 199, 207), the Court of Appeals set forth the general rule with respect to the prosecutor's failure to produce a witness which he had referred to in his opening statement, as follows: "the general rule is that, absent bad faith or undue prejudice, a trial will not be undone". Here, although there was no evidence of bad faith on the part of the prosecutor in referring to the expected testimony of Ruiz and no motions for a mistrial were made, in view of the fact that the evidence of defendant's guilt was far from overwhelming, the refer-ences to Ruiz unduly prejudiced the defendant and require a new trial (see *People v Ware,* 13 AD2d 1015). ¶ Moreover, during the prosecutor's examina-tion of Detective Filippone, the following colloquy also occurred: ¶ "Q You had a conversation with David Ruiz; is that correct? ¶ "A That is correct. ¶ "Q All right. Now Detective, did there come a time when you made two arrests in this case? ¶ "A Yes, I did". ¶ The prosecutor's questioning of Detective Filippone concerning a conversation with Ruiz, which directly preceded Filippone's testimony that he made two arrests in the case was improper inasmuch as it was designed to create the impression in the jurors' minds that Ruiz had implicated the defendant and Medina (see *People v Brown,* 91 AD2d 639; *People v Tufano,* 69 AD2d 826). O'Connor, J. P., Brown, Boyers and Eiber, JJ., concur.