■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD WILLIAMS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Dunkin, J.), rendered January 6, 1981, convicting him of robbery in the first degree (two counts), and criminal possession of stolen property in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

On December 17, 1979, at approximately 7:25 P.M., Thomas McKoy was working as a gas station attendant. He noticed defendant by a fence at the edge of the station. Defendant walked with a limp to the station office where, on the pretext that he was going to make a cigarette purchase, he gained

admittance from a second employee, Willie Robinson. Once inside, defendant pulled a shotgun and demanded all the money. He then told Robinson to call McKoy inside. When McKoy entered the office, defendant pointed the shotgun toward him and took all his money. The office was well lit and both McKoy and Robinson observed the defendant for some 5 to 10 minutes. After taking the money, defendant pushed Robinson into the rear of the office and had McKoy walk ahead of him. McKoy went over to the gasoline pump to service a car and the defendant left. McKoy returned to the office and called the police. They arrived shortly thereafter and were given defendant's description. Officers De Vito and Tiffany, on radio patrol, heard a radio report as to the robbery and another describing the perpetrator. Shortly thereafter, they spotted the defendant, who fit the description, and he was stopped, frisked and patted down. Upon being informed of the robbery and that he fit the description of the robber, defendant agreed to return with the officers to the scene of the crime. The officers and defendant arrived at the gas station about 15 minutes after the robbery was completed. There was a showup of defendant which was viewed by McKoy and Robinson, and they identified the defendant. He was thereupon arrested.

The trial court denied the defendant's pretrial motions to suppress the out-of-court as well as the in-court identifications. The court also denied the motion to suppress physical evidence. We affirm.

Both McKoy and Robinson had an opportunity to observe defendant for several minutes during the robbery. Their description of his dress and facial features did not differ. The showup identification was conducted about 15 minutes after the robbery, while defendant's appearance was fresh in their minds. The identification procedure was not unnecessarily suggestive, or conducive to irreparable mistaken identification. Moreover, during the showup, defendant said something and McKoy was able to identify his voice. The showup was the result of good police work (*People v Veal,* 106 AD2d 418; *People v Stevenson,* 104 AD2d 835).

While it was error to permit the arresting officers to testify as to the descriptions of the robber given to them by the victims as well as to the identifications of defendant made by the victims at the on-the-scene showup (*People v Trowbridge,* 305 NY 471), we conclude that the error was harmless. The victims had ample time to observe the defendant during the robbery for a period of from 5 to 10 minutes under good lighting conditions. During the showup, McKoy was able to make a voice identification. The

evidence of identity was so strong that there was no issue on this point (*People v Johnson,* 57 NY2d 969; *People v Mobley,* 56 NY2d 584). Defendant further argues that the People's witness "bolstered" his own testimony because, when asked where he worked, he stated he had been an auxiliary police officer and had received training in making accurate observations. However, this was not impermissible "bolstering", but, rather, was information which the jury could consider in their evaluation of his testimony. Mangano, J. P., Brown, Rubin and Lawrence, JJ., concur.