[656 NYS2d 243]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT CUIMAN, Appellant.

First Department, April 15, 1997

### APPEARANCES OF COUNSEL

*Bryan Lonegan* of counsel *(Daniel L. Greenberg,* attorney), for appellant.

*Jennifer A. Roney* of counsel *(Deborah L. Morse* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

On January 4, 1993, five persons were robbed at knifepoint in an apartment elevator in Manhattan's Rangle Projects. The single victim able to describe the assailant's face to police portrayed him as a light-skinned black man, about 5 feet, 6 inches tall, with light facial hair but no beard, and without glasses. Later that day, viewing a book of mug shots provided to her by Detective Carlos Diaz, the complainant identified defendant Robert Cuiman as her attacker; she also identified defendant in a police lineup one day later. At the time of his arrest, defendant was 5 feet, 8 inches tall, wore eyeglasses, and bore a light mustache and beard.

Because defendant's appearance at the time of the lineup differed in several respects from the initial description of the assailant that the complainant gave to police, and as no other convincing physical evidence was discovered to connect defendant with the crime, the central issue at trial was the accuracy of the complainant's eyewitness testimony. Especially in its cross-examination of the complainant, the defense sought to highlight incongruities between her initial description and her lineup identification. The People made no effort to rebut this cross-examination, and no mention was made of the photo identification in the course of the complainant's testimony. Later, while cross-examining Detective Diaz, the defense inquired into the physical evidence linking defendant with the crime, the differences between the physical description provided by the witness and the appearance presented by defendant at the lineup, and the failure of the police to secure a warrant or conduct a search upon the defendant's arrest. Once

again, no mention of the photo identification was made in the direct or cross-examination of Detective Diaz. However, alleging that this cross-examination left the jury with the impression that defendant's arrest had been premised only on the vague description provided after the robbery, the People sought permission to inquire of Diaz on redirect about the photo identification. The court acceded. Through apparent mishap, the prosecutor elicited a statement from the detective that the photo identified by complainant shortly after the incident (and before defendant's arrest in this matter) was "an arrest photo of the defendant". Following the defendant's objection, and after extended colloquy outside the presence of the jury, the court permitted Detective Diaz to testify further about the witness's identification of the photo, but without additional mention of its association with an "arrest". After trial, defendant was convicted of four counts of robbery in the first degree, and sentenced as a second violent felony offender to prison for 10 to 20 years.

In our view, the admission of testimony by Detective Diaz about complainant's identification of defendant's photo, together with his denomination of the photo as an arrest photo, require reversal and a new trial. Testimony by prosecution witnesses about pretrial photo identifications of the accused has long been prohibited in this State on the ground that it improperly repeats and reinforces the witness's testimony (*see, People v Griffin*, 29 NY2d 91, 93). This prohibition is lifted in rare instances—where the defense mentions the photo identification during cross-examination or at some other time (*see, e.g., People v Whipset*, 80 AD2d 986, *lv denied* 53 NY2d 947), or the defense creates an unfair "misimpression" about the witness's identification which can be cured by testimony about the photo identification (*People v Giallombardo*, 128 AD2d 547, 548, *lv denied* 69 NY2d 1004), or the witness's identification is alleged to be a fabrication (*People v Caserta*, 19 NY2d 18, 21-22). In the instant matter, the People lay claim to these latter two exceptions, and further argue that Diaz's testimony was admissible because it "would have been admissible as proper background information explaining why police pursued defendant had it been introduced on direct" (*People v Gonzalez*, 225 AD2d 417, 418, *lv denied* 88 NY2d 936). Each of these claims is meritless.

Our reading of the record leads us to conclude that the defense at no time argued in its cross-examination of Detective Diaz that the defendant had been randomly or improperly

selected on the basis of the witness's description of the assailant. Instead, that cross-examination focused upon the lack of physical evidence—fingerprints, clothing, weapon, fruits of the crime—found upon the defendant, as well as the distinct differences between the initial description of the perpetrator and the appearance of the defendant at the lineup. Since the introduction of testimony about the prior photo identification on redirect sought to address an issue that was nowhere raised on cross-examination, it was impermissible (*People v Melendez*, 55 NY2d 445).

To be sure, the defense suggested through Diaz's cross-examination—just as it had through the cross-examination of the complainant herself—that the lineup identification conflicted with the oral description one day earlier and was unsupported by after-acquired evidence. Yet this challenge to the accuracy of the complainant's memory did not charge her with fabrication of her identification of the defendant, and provided no basis for introduction of the bolstering testimony about the photograph. As the Court of Appeals noted in *Caserta* (19 NY2d, *supra,* at 25), "[f]ew are the criminal actions in which an attempt is not made on cross-examination to impair the credibility of key witnesses for the prosecution. If, whenever that happens concerning an issue of identity, the witness and collateral witnesses are permitted to [testify about earlier photo identifications], there will be little left of these well-established and reasonable rules" (*see also, People v Barnes*, 93 AD2d 864, 865, *lv denied* 60 NY2d 589). Nor did Diaz's testimony about the complainant's photo identification rehabilitate the complainant's credibility in any logical or legitimate fashion. The People do not allege that the defendant changed his physical appearance between the time of the robbery and the time of his arrest or trial; there is no evidence in the record, and no reason to presume, that the defendant's prior arrest photo more closely resembled the complainant's physical description of her assailant than did defendant at the lineup one day after the criminal incident. Consequently, Detective Diaz's testimony about the photo identification merely repeated and bolstered the impact of the lineup identification, without in any fashion addressing the criticisms raised by the defense.

Even if the People could argue persuasively that the defense created a misimpression about the propriety of the defendant's initial arrest, we find that collateral issue to be an insufficient cause for the introduction of testimony by Detective Diaz about

the complainant's photo identification of the defendant. In our view, the exception set forth in *Giallombardo (supra)* is a narrow one, and applies most cogently to correct a misimpression created by defense counsel during cross-examination regarding the ability of the testifying witness to identify the defendant (*see, People v Lindsay*, 42 NY2d 9, 12). For this reason, cases which have permitted discussion of a prior photo identification to correct a misimpression arising during cross-examination have generally involved cross-examination of the identifying witness, and have responded to defense challenges to the witness's recollection and trial testimony (*see, e.g., People v Langert*, 105 AD2d 845, *lv denied* 64 NY2d 782; *People v Marrero*, 117 AD2d 626, *lv denied* 67 NY2d 946). Where a person other than the identifying witness is cross-examined, the introduction of redirect evidence of photo identifications is more questionable. Consequently, courts have routinely held that a cross-examination which might authorize testimony about photo identification by an identifying witness does not legitimize confirmatory or bolstering testimony by third parties (*see, e.g., People v Jenkins*, 133 AD2d 279, *lv denied* 70 NY2d 875; *People v Grate*, 122 AD2d 853, *lv denied* 68 NY2d 1000).\* Of course, the dangers of improper third-party bolstering in such cases are especially acute where the witness is a law enforcement officer (*see, People v Trowbridge*, 305 NY 471, *supra*).

In our view, testimony about a prior photo identification is even more tenuous where, as here, it is first raised in response to a topic addressed on cross-examination other than the credibility of the identifying witness's observations. On rare occasions we have held that such testimony may be offered to correct a misimpression that the identifying witness's identification testimony was tailored or fabricated (*see, People v Brown*, 62 AD2d 715, *affd* 48 NY2d 921). But even this exception is inapplicable where, as here, the defense challenges the identification not as fabrication but as mistake.

Even if admission of testimony regarding the earlier photo identification were proper in the instant case, however, the fairness of defendant's trial was further and fatally compromised by the detective's identification of the photo as an "ar-

---

\* The distinction between identifying witness and third-party testimony has long been recognized in statutes and case law setting forth the scope of the introduction of photo identification testimony (*see,* CPL 60.25, 60.30; *People v Trowbridge*, 305 NY 471, 475-477; *see also,* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 60.30).

rest photo of the defendant". "It is elementary that evidence of a defendant's prior criminal or immoral conduct is inadmissible if it cannot logically be linked to some specific material issue in the case" (*People v Hudy*, 73 NY2d 40, 54). "[W]here the identification is from photographs in the rogues' gallery (even though the name or number on the picture has been excinded) the inference to the jury is obvious that the person has been in trouble with the law before. Such an inference is accentuated where the defendant fails to take the witness stand" (*People v Caserta*, 19 NY2d 18, 21, *supra*). Here, Detective Diaz's testimony that the photo viewed by the complainant was an arrest photo created a strong inference that the defendant had a criminal record (*see, People v Bond*, 198 AD2d 509), and was irrelevant to any issue in the case other than the defendant's criminal propensity. Consequently, it was inadmissible and prejudicial.

We cannot agree with the People's claim that these errors, even if inadvertent, were harmless. The complainant was the only witness who was able to give a description of her assailant's face. She was the only person to identify the defendant, whom she had not met previously. In the absence of evidence of a physical nature linking defendant to the crime, that identification was the cornerstone of the People's case, and was strongly contested by the defense on the ground that it was inconsistent with the prior description. Under these circumstances, the erroneous introduction of a prior photo identification and the announcement that the defendant had an "arrest photo" at the time of the incident compel reversal.

Accordingly, the judgment of the Supreme Court, New York County (Paul Bookson, J.), rendered June 9, 1994, convicting defendant, after a jury trial, of four counts of robbery in the first degree, and sentencing him, as a second violent felony offender, to concurrent terms of 10 to 20 years, should be reversed, on the law, and the matter remanded for a new trial.

MILONAS, ROSENBERGER, ELLERIN and WILLIAMS, JJ., concur.

Judgment, Supreme Court, New York County, rendered June 9, 1994, reversed, on the law, and the matter remanded for a new trial.