THIRD DEPARTMENT, JUNE, 2007

(June 7, 2007)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELVIN MCEADDY, Appellant. [838 NYS2d 218]—

Kane, J. Appeal from a judgment of the Supreme Court (Teresi, J.), rendered January 5, 2006 in Albany County, upon a verdict convicting defendant of the crime of robbery in the first degree.

On September 27, 2002, two men held up a convenience store in the City of Albany, taking cash and cartons of cigarettes. On October 9, 2002, one man entered the same store, displayed a handgun, ordered the clerk to open the cash register and go to the back room, then stole cash and cartons of cigarettes. Both incidents were recorded by the store's video surveillance system. The investigating officers released the videotape of the second robbery to a local television station, resulting in tips identifying defendant as the robber in the video. Defendant was indicted on robbery in the first degree for the October incident and robbery in the second degree for the September incident. He pleaded guilty to robbery in the first degree and was sentenced to a prison term of 17 years, but this Court reversed that judgment (20 AD3d 585 [2005]). At his trial upon remittal, the jury acquitted him of the count related to the September robbery, but convicted him in relation to the October robbery. Supreme Court sentenced defendant, as a predicate felon, to a prison term of 25 years and five years of postrelease supervision. Defendant appeals.

Initially, defendant's pro se argument concerning the suppression hearing is merely an attack on witness credibility which does not support a reversal of the suppression ruling by County Court (Herrick, J.).

Defendant's rights under the Confrontation Clause were violated when the prosecution elicited from two detectives the hearsay testimonial statements of a nonwitness. Courts may not admit testimonial out-of-court statements which are made by an individual who does not testify at trial and whom defendant has not had an opportunity to cross-examine, if the statements are offered for the truth of the matter asserted (*see Crawford v Washington*, 541 US 36, 51-69 [2004]; *People v McBean*, 32 AD3d 549, 552 [2006], *lv denied* 7 NY3d 927 [2006]). Two detectives testified that after the video aired on television, several people called in tips that defendant was the man in the video. The detectives further stated that after taking another call identifying defendant from the video, they talked with Kevin Woodall, obtained two sworn statements from him, then arrested defendant for the September 2002 robbery. One detective referred to Woodall as a witness to the incident. Woodall never testified.

Clearly, a statement solicited by a police agency for investigative and evidentiary purposes to advance a potential prosecution is testimonial under the *Crawford* criteria (*see Davis v Washington*, 547 US —, —, 126 S Ct 2266, 2273-2274 [2006]; *People v Goldstein*, 6 NY3d 119, 128-129 [2005], *cert denied* 547 US —, 126 S Ct 2293 [2006]; *People v Paul [Ahib]*, 25 AD3d 165, 169-170 [2005], *lvs denied* 6 NY3d 752, 757 [2005]; *People v Bradley*, 22 AD3d 33, 42 [2005], *affd* 8 NY3d 124 [2006]). Although we have previously held that testimonial statements relating to a police officer's course of conduct or state of mind during an investigation are admissible (*see People v Davis*, 23 AD3d 833, 835 [2005], *lv denied* 6 NY3d 811 [2006]; *People v Wisdom*, 23 AD3d 759, 761 [2005], *lv denied* 6 NY3d 840 [2006]; *accord People v Ruis [Rodriguez]*, 11 AD3d 714, 714 [2004], *lvs denied* 4 NY3d 747, 748 [2004]; *People v Nunez*, 7 AD3d 298, 299-300 [2004], *lv denied* 3 NY3d 679 [2004]), indeed such statements are not admissible unless they are offered for some relevant purpose other than the truth of the statement. While police officers may be permitted to testify to statements obtained in the course of an investigation for purposes other than to establish their truth—such as to show the officer's state of mind and actions in response to the defense's attack on the investigation (*see People v Davis, supra* at 834-835; *People v Reynoso*, 309 AD2d 769, 770-771 [2003], *affd* 2 NY3d 820 [2004]) or to explain a defendant's reaction to hearing that others had implicated him or her (*see People v Ewell*, 12 AD3d 616, 617 [2004], *lv denied* 4 NY3d 763 [2005])—here the statements regarding the course of the investigation were relevant only to prove the truth of their contents, since no relevant nonhearsay purpose was demonstrated.

The constitutional error here cannot be deemed harmless beyond a reasonable doubt (*see People v Crimmins*, 36 NY2d 230, 237 [1975]). Identity of the robber was the sole contested issue at trial. The only eyewitness, the store clerk, could not positively identify defendant at trial, although he had identified defendant from a photo array a few days after the October 2002 robbery. The individual depicted on the surveillance video and a still photograph derived from that video had some resemblance to defendant, but the likeness was far from conclusive. An alleged admission by defendant was of questionable value because of the contradictory testimony of the detectives concerning the circumstances under which defendant made the disclosure.

In addition to violating defendant's right of confrontation, hearsay testimony about calls from several people, including Woodall, identifying the man in the video as defendant improp-

erly served to bolster the proof of identity (*see People v Holt*, 67 NY2d 819, 821 [1986]; *compare People v Bonnen*, 236 AD2d 479, 480 [1997], *lv denied* 89 NY2d 1089 [1997]).

This problem was exacerbated by the prosecutor's opening statement (*see People v Bonnen, supra* at 480).* The prosecutor indicated that at least three calls came in to the police station identifying the robber as defendant after the video aired. The People's opening also stated that Woodall called the police, he was a friend of defendant and knew defendant for at least three years, police interviewed Woodall and obtained a sworn statement from him, and he identified defendant as the October 2002 robber from the video on television and as the September 2002 robber from a video of that incident. Unfulfilled representations in a prosecutor's opening statement should only lead to a mistrial or new trial when they result from bad faith or result in undue prejudice (*see People v De Tore*, 34 NY2d 199, 207 [1974]; *People v Cruz*, 100 AD2d 882, 883 [1984]). There are no allegations of bad faith here, but considering the lack of overwhelming testimony linking defendant to the robberies, defendant was unduly prejudiced by hearsay statements expressing or designed to imply that other people who knew defendant had identified him from the video, as he was not permitted to confront the people who allegedly implicated him in these crimes (*compare People v Bonnen, supra* at 480; *People v Cruz, supra* at 883; *People v Tufano*, 69 AD2d 826, 826-827 [1979]).

In light of our reversal, we need not address defendant's remaining contentions.

Cardona, P.J., Crew III, Spain and Lahtinen, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the Supreme Court for a new trial.

---

* Although defendant did not object to the prosecutor's opening statement or later move for a mistrial, thus not preserving the issue (*see People v De Tore*, 34 NY2d 199, 208 [1974]; *People v Copeland*, 30 AD3d 1022, 1023 [2006], *lv denied* 7 NY3d 847 [2006]), we will consider the unfulfilled representations of the People's opening because they directly relate to and exacerbate the properly preserved confrontation argument.