THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS SPEAKS, Appellant. [1 NYS3d 257]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Ingram, J.), rendered October 9, 2012, convicting him of robbery in the first degree (two counts) and robbery in the second degree (two counts), upon a jury verdict, and imposing sentence. The appeals brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

The defendant's contention that the lineup was unduly suggestive is without merit. There is no requirement that a defendant who participates in a lineup be placed among individuals who are nearly identical to him (*see People v Chipp*, 75 NY2d 327 [1990]; *People v Villacreses*, 12 AD3d 624 [2004]). The defendant's contention that there was a height difference between him and the other lineup participants is unpreserved for appellate review (*see* CPL 470.50 [2]). In any event, photographs of the lineup introduced into evidence at the hearing confirm that the lineup participants were seated so as to minimize any height disparities (*see People v Villacreses*, 12 AD3d at 624; *People v Huggins*, 292 AD2d 543 [2002]). The photographs also demonstrate that the fillers sufficiently resembled the defendant (*see People v Villacreses*, 12 AD3d at 624; *People v Snyder*, 304 AD2d 776 [2003]). Skin tone is only one of the factors to be considered in deciding "reasonable similarity" (*People v Villacreses*, 12 AD3d at 625 [internal quotation marks omitted]; *see People v Miller*, 199 AD2d 422, 423 [1993]), and differences in skin tone alone will not render a lineup unduly suggestive (*see People v Villacreses*, 12 AD3d at 624; *People v Pointer*, 253 AD2d 500 [1998]).

The defendant's contention that the People failed to present legally sufficient evidence to sustain his convictions of robbery in the first degree and robbery in the second degree (Penal Law §§ 160.15 [1]; 160.10 [1]) is unpreserved for appellate review (*see People v Hawkins*, 11 NY3d 484, 492 [2008]; *People v Gray*, 86 NY2d 10, 19 [1995]). In any event, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt (*see* Penal Law § 160.00 [2]; *People v Smith*, 87 AD3d 920 [2011], *affd* 22 NY3d 1092 [2014]; *People v Peters*, 69 AD3d 765 [2010]). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses,

hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

We agree with our dissenting colleague that *certain* cases warrant, upon the defendant's request and in the exercise of the court's discretion, expert testimony regarding eyewitness identification (*see generally People v LeGrand*, 8 NY3d 449, 452, 454-457 [2007]). Generally, these are cases which " 'turn[ ] on the accuracy of eyewitness identifications [with] little or no corroborating evidence connecting the defendant to the crime' " (*People v Rhodes*, 115 AD3d 681, 681-682 [2014], quoting *People v LeGrand*, 8 NY3d at 452). Here, the defendant did not seek to offer expert testimony, and he does not raise that issue on appeal. Moreover, this record reveals that there was sufficient corroborating evidence connecting the defendant to the crime (*see People v Rhodes*, 115 AD3d at 681-682). In addition to identifications by three eyewitnesses to the robbery, the People admitted surveillance video of the defendant, placing him near the scene shortly before the robbery, and then leaving the scene moments after the robbery.

The defendant failed to preserve for appellate review his contention that the testimony of Detective Michael Henry recounting a description of the perpetrator given by a nontestifying witness, Joel Anderson, violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution (US Const 6th Amend). The defendant did not object to the testimony on those specific grounds; he raised only a hearsay objection to this testimony (*see People v Walker*, 70 AD3d 870, 871 [2010]; *People v Chandler*, 59 AD3d 562 [2009]). In any event, the defendant's contention is without merit. The jury was specifically instructed not to consider this description for its truth, and the description was properly admitted for the relevant, nonhearsay purpose of "establishing the reasons behind the detective's actions, and to complete the narrative of events leading to the defendant's arrest" (*People v Ragsdale*, 68 AD3d 897, 897-898 [2009]; *cf. People v Rosario*, 100 AD3d 660, 661 [2012]). Contrary to the view of our dissenting colleague, we find that the People sufficiently established a connection between Anderson's description and subsequent police conduct. Anderson's general description of the perpetrator, as distinct from a direct identification of the defendant, led to successive police investigatory conduct such as interviewing other witnesses, including a witness who identified the defend-

ant at trial, and procuring the surveillance video of the defendant (cf. *People v Berry*, 49 AD3d 888, 888-889 [2008]; *People v McEaddy*, 41 AD3d 877, 879 [2007]). Thus, the Supreme Court did not err in admitting Anderson's description of the perpetrator for a limited nonhearsay purpose (*see People v Ragsdale*, 68 AD3d at 897-898).

The defendant's contentions that Detective Henry's testimony regarding the description of the perpetrator given by the People's witness Christine Mateo constituted improper bolstering and inadmissible hearsay are also unpreserved for appellate review, as the defendant did not object to that testimony (*see People v Walker*, 70 AD3d at 871; *People v Chandler*, 59 AD3d 562 [2009]). In any event, these contentions are without merit. Much like Detective Henry's testimony about the general description of the perpetrator given by the nontestifying witness Anderson, the detective recounted only a general description given by Mateo, who later testified for the People and identified the defendant in court. We find that Mateo's general description of the perpetrator was properly admitted for the relevant, nonhearsay purpose of "establishing the reasons behind the detective's actions, and to complete the narrative of events leading to the defendant's arrest" (*People v Ragsdale*, 68 AD3d at 897-898), and it did not constitute improper bolstering (*see People v Rosario*, 100 AD3d at 661; cf. *People v Bacenet*, 297 AD2d 817, 818 [2002]).

The defendant's remaining contentions are without merit. Dillon, J.P., Chambers, and Maltese, JJ., concur.

Hall, J., dissents, and votes to reverse the judgment appealed from and to order a new trial, with the following memorandum: While I agree with certain determinations made by my colleagues in the majority, I must respectfully dissent in light of certain errors at trial, which, in my view, require reversal in this case. Specifically, I believe that it was error for the trial court to admit into evidence the hearsay testimony of a police officer regarding a description of the subject perpetrators given by a nontestifying witness. Second, I believe the trial court also erred in allowing the police officer to testify as to the description of the perpetrators given by a testifying witness, who identified the defendant for the first time at trial.

This case stems from an August 2010 robbery of people at a Kentucky Fried Chicken (hereinafter KFC) restaurant in Brooklyn. At trial, testimony was elicited from three complaining witnesses: Wilton Major, Christine Mateo, and Kevin Wilson, all of whom were KFC employees present at the time of the robbery.

Wilton Major testified that on August 18, 2010, he was working as a chef at the KFC located on 666 Bushwick Avenue in Brooklyn, and that at about 5:15 p.m., the KFC was "robbed." Major was in the kitchen getting ready for work when two men walked in the back door, which had been left open because it was hot. The two men differed in size, with the larger of the two being six feet "something," and about 200 pounds, and wearing an orange jersey. The smaller of the two was about 5 feet, 10 inches tall and about "100 and something pounds." Major noticed that the smaller man was armed with a weapon. Major later identified the defendant as the larger man.

The defendant grabbed Major at the back of his head and ordered him to go to the front of the KFC. Once the defendant and Major reached the front of the KFC, the defendant asked for the manager. The smaller man went to the back of the KFC where the manager was. At this point, the KFC employees were told to get down on the floor and were asked if any of them had any money or cell phones.

According to Major, the defendant went through his pockets and proceeded to take $50 and his cell phone. While this was occurring, Major saw the defendant's face. The defendant appeared to have a shaven face with no hair on it. The defendant took cell phones from the other KFC employees as well. The safe had been opened and the smaller man took whatever he wanted. The employees were told to stay down for 5 or 10 minutes, and then they could get up. The perpetrators took the manager to the back door before fleeing the scene.

After the incident, Major was interviewed by police officers and was asked for a description of the perpetrators, but did not provide one. Major told the police officers that he did not know if he could identify anyone.

However, on March 14, 2011, approximately seven months after the incident, Major went to the police station to view a lineup. At the lineup, he recognized the defendant as a perpetrator of the robbery. According to Major, he recognized the defendant's face, size, and "everything."

At trial, Major viewed a compact disc containing surveillance footage of the street next to the KFC on the day of the robbery. Major testified that the video showed the two men entering the KFC to commit a robbery at the store. Major recognized the men in the video by their clothing. Major also viewed photographic stills taken from the video. One of the stills seemed to depict someone with a little bit of facial hair; the facial hair appeared to be white. Major could not recall whether the defendant had facial hair.

Christina Mateo, the second complaining witness, testified that she was also working at the KFC at the time of the robbery. Mateo identified the defendant as the larger of the two men, being approximately 6 feet tall and 200 to 250 pounds. She recalled him having facial hair that "just really started growing." The other man was shorter and possessed a gun. Mateo stated the KFC employees were directed to sit down, face the wall, and not turn around. Mateo explained that the whole incident went "by fast," but that the lights were on and she could see faces. According to Mateo, there was nothing obstructing her view.

Mateo also viewed the surveillance footage at trial and, in one of the stills, claimed to recognize the defendant from his hat, shirt, shorts, and sneakers. Although Mateo could not see the defendant's face on the video, she knew it was him by his weight and clothes. According to Mateo, she recognized the defendant by the shape of his head and complexion.

After the incident, Mateo provided the police with a description of the perpetrators. She informed the police that the larger man was in his 30s, had caramel, light skin, and was wearing a yellow shirt. Mateo also described the larger man as being "big, 200 maybe close to 300 pounds," and wearing a hat. A couple of days after the incident, Mateo identified the smaller man in a photo array at the police station. However, Mateo did not view a photo array or lineup with the defendant. Mateo identified the defendant as the larger perpetrator for the first time at trial, more than two years after the incident.

The third complaining witness, Kevin Wilson, testified that on the day of the robbery, he was working in the KFC as the general manager. According to Wilson, the cameras in the KFC were not working on the date of the incident. While Wilson was working in the back of the KFC, he noticed a man with a gun who stated, "don't move." According to Wilson, this man was about five feet, five inches or five feet, six inches tall, about 140 to 150 pounds, dark skinned, with braids, and wearing a cap. While being walked to the front of the KFC, Wilson noticed another man who had the other employees on the ground. This second man was close to six feet tall, weighed about 200 pounds, and was light skinned. Wilson explained that he only glanced at the larger man, as he was focused on the smaller man, who was carrying a gun.

A day or two after the incident, Wilson viewed a lineup with the shorter man, but never viewed a lineup with the larger man. Like Mateo, Wilson only identified the defendant for the first time at trial, which was more than two years after the

incident. However, Wilson identified the defendant as the "skinny guy." Wilson further stated that the defendant looked like the shorter man, "but with more weight."

The People also presented the testimony of Detective Michael Henry. Over defense counsel's objection, the prosecution elicited testimony from Detective Henry pertaining to a description of the perpetrators provided by KFC employee Joel Anderson, who did not testify at trial. The trial court allowed the testimony to be introduced into evidence not for its truth, but "to explain why this witness did whatever he may have done." Detective Henry proceeded to testify that Anderson described the perpetrators as two male blacks, in their 30s, one perpetrator being approximately five feet, nine inches tall and 145 pounds, and the other perpetrator being six feet, four inches tall and approximately 240 pounds.

Detective Henry also testified to the description provided to him by Mateo. Specifically, Detective Henry testified that Mateo provided a description of the perpetrators similar to the one given by Anderson: two male blacks, one being five feet, eight inches tall and 140 pounds, and the other being more than six feet tall and in the 240-pound range.

The jury convicted the defendant of robbery in the first degree (two counts) and robbery in the second degree (two counts).

My analysis of this case necessarily focuses on the eyewitness identification testimony against the defendant. This type of evidence has been the topic of considerable scrutiny by the courts, lawyers, legal scholars, and journalists over the past decade and longer. The consensus appears to be that eyewitness identification testimony is hardly as infallible as it was once thought to be. Indeed, the United States Supreme Court has cautioned that eyewitness identifications must be carefully examined, factoring in a number of criteria, such as the duration of observation, lighting, use of a weapon, and the emotional impact of the incident on the witness (see Manson v Brathwaite, 432 US 98 [1977]). Skepticism concerning the strength of eyewitness identifications has led a number of courts to allow the presentation of expert testimony to educate jurors about the problems inherent in this type of evidence (see People v Abney, 13 NY3d 251 [2009]; People v LeGrand, 8 NY3d 449 [2007]; People v Lee, 96 NY2d 157 [2001]). With this short background, I now turn to the specific errors in this problematic case.

Upon my reading of the record, I find that it was error for the trial court to permit Detective Henry to testify as to Anderson's description of the perpetrators, as such testimony was inadmissible hearsay.

Hearsay is an out-of-court statement offered for the truth of the matter asserted (*see People v Buie*, 86 NY2d 501, 505 [1995]). When an out-of-court statement is not offered for its truth, but rather to explain the basis for subsequent police action, it is not considered to be hearsay. However, where there is no connection between the out-of-court statement and subsequent police action, it cannot be said that the out-of-court statement was offered for a nonhearsay purpose. Here, in my view, Detective Henry's testimony regarding Anderson's description of the perpetrators was inadmissible hearsay, since the People failed to connect Anderson's description to any subsequent police conduct. Indeed, Detective Henry did not provide any testimony connecting Anderson's description to any successive course of action he, or any other police officer, took.

Although the trial court instructed the jury not to consider Anderson's description for its truth, but only to explain what Detective Henry did, in my view, this instruction did not ameliorate the error here, since the People did not connect Anderson's description to any subsequent police conduct. Without this connection, there was no purpose for the introduction of Anderson's description, other than for its truth.

Additionally, I find that Detective Henry's testimony, which reiterated the description of the perpetrators given by Mateo, constituted both inadmissible hearsay and improper bolstering.

With respect to preservation, I find that defense counsel's objection to Detective Henry's testimony regarding Anderson's description on hearsay grounds was sufficient to preserve for appellate review the contention that Detective Henry's testimony as to Mateo's description constituted inadmissible hearsay. Under CPL 470.05 (2), a question of law with respect to a ruling in a criminal proceeding is raised when the party claiming error has effectively raised a protest to such ruling. CPL 470.05 (2) further provides that such protest is "sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal." The Court of Appeals has interpreted this to mean that "an attorney need not repeatedly protest a court's clear ruling" (*People v Lewis*, 5 NY3d 546, 551 [2005]; *see People v Mezon*, 80 NY2d 155, 161 [1992] [counsel need not "make repeated pointless protests after the court has made its position clear"]).

Here, defense counsel objected to the prosecutor's initial elicitation of testimony from Detective Henry with respect to Anderson's description on the ground of hearsay. The trial court overruled defense counsel's objection, and the testimony was

found to be admissible for the purpose of explaining police action. Once defense counsel's objection was recorded and clearly ruled on by the trial court, counsel was not thereafter obligated to continuously object to similar testimony on the same ground. Therefore, I find that defense counsel's objection to the testimony regarding Anderson's description on hearsay grounds was sufficient to preserve for appellate review the contention that Detective Henry's testimony as to Mateo's description constituted inadmissible hearsay.

As to the merits, similar to Detective Henry's testimony regarding the description provided by Anderson, the People also failed to connect the testimony concerning Mateo's description to any subsequent course of action taken by the police. In my opinion, the out-of-court statements concerning Mateo's description could only be considered for the truth of the description and, thus, constituted inadmissible hearsay.

The defendant contends that Detective Henry's testimony as to Mateo's description also constituted improper bolstering, violating the rule enunciated in *People v Trowbridge* (305 NY 471 [1953]). The People argue that this contention has been waived because defense counsel elicited Mateo's entire description during the cross-examination of Detective Henry, and that the contention is otherwise unpreserved for appellate review. In my view, the defendant's contention regarding improper bolstering has not been affirmatively waived.

In *People v Bryan* (50 AD3d 1049 [2008]), this Court found that the defendant therein waived his improper bolstering claim, since defense counsel not only elicited the same description from the police officers on cross-examination, but also "argued during summation that the complainant's testimony was not credible" (*id.* at 1051). Here, in contrast, defense counsel did not argue during summation that Mateo's description was not credible. Indeed, at no point during summation did defense counsel even refer to Mateo's pretrial description of the perpetrators. Simply questioning Detective Henry about Mateo's description, without affirmatively using that description to support a defense, is not tantamount to waiver.

My colleagues in the majority have concluded, and I agree, that the defendant's contention challenging this testimony on improper bolstering grounds is unpreserved for appellate review. However, in my view, this is an appropriate case for this Court to exercise its interest of justice jurisdiction to reach the defendant's meritorious contention (*see People v Nesbitt*, 77 AD3d 854, 855 [2010]; *People v Lee*, 22 AD3d 602, 602-603 [2005]).

It is well established that when a third party recites a

witness's out-of-court identification of the defendant, such testimony constitutes improper bolstering (*see People v Dai He Ou-Yang*, 236 AD2d 554, 554 [1997]; *People v Cortes*, 173 AD2d 319 [1991]). This Court has repeatedly held that this rule also extends to a witness's out-of-court description of the perpetrator (*see People v Byron*, 171 AD2d 802 [1991]; *People v Larsen*, 157 AD2d 672 [1990]; *People v Williams*, 109 AD2d 906 [1985]). Improper bolstering occurs where testimony provides official confirmation of a complainant's description or identification of the defendant (*see People v Trowbridge*, 305 NY 471 [1953]; *People v Bacenet*, 297 AD2d 817, 818 [2002]; *People v Green*, 104 AD2d 451, 452 [1984]).

Upon my reading of the record, I find that Detective Henry's testimony regarding Mateo's pretrial description of the perpetrators constituted improper bolstering. Before Detective Henry took the stand, Mateo had already provided her testimony in court, during which she identified the defendant as the larger robber and provided her description of the perpetrators. In my view, Detective Henry's repetition of Mateo's pretrial description served to implicitly bolster her identification testimony. Such testimony was of little or no probative value, and the danger of such bolstering testimony was "especially acute," since it was provided by a law enforcement officer (*People v Cuiman*, 229 AD2d 280, 284 [1997]).

A violation of the rule against improper bolstering may only be overlooked in situations where "evidence of identity is so strong that there is no serious issue upon that point" (*People v Fields*, 309 AD2d 945, 946 [2003]; *see People v Bacenet*, 297 AD2d 817 [2002]; *People v Bryan*, 179 AD2d 667 [1992]). That standard has not been met here. With the lack of any physical evidence linking the defendant to the crime, the question of identity was a critical and hotly disputed issue at trial.

Moreover, these errors cannot be considered harmless. Where no constitutional error is implicated, the error is harmless where the evidence of the defendant's guilt is overwhelming and there is no significant probability that the error contributed to the conviction (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]; *People v Williams*, 99 AD3d 955 [2012]). The evidence of the defendant's guilt was not overwhelming, as the identification evidence was problematic in several respects. To start, only one of the complaining witnesses, Major, actually identified the defendant prior to trial. However, that identification took place nearly seven months after the crime, which is a substantial lapse in time. Furthermore, shortly after the crime, Major could not give a description of the perpetrators to the police.

Of the two other witnesses who identified the defendant at trial, one witness, Wilson, misidentified the defendant as the shorter robber. Indeed, the record shows that Wilson's attention was primarily focused on the shorter perpetrator, who was armed with a gun. While Mateo identified the defendant as the larger robber, she did so for the first time at trial, more than two years after the incident, with the defendant seated at the defense table. Furthermore, the record reveals that these witnesses had problems recalling whether the larger perpetrator had facial hair or was wearing a hat during the incident. The inconsistencies surrounding whether the perpetrator had facial hair are especially concerning, as the defendant testified that he had alopecia, a disease that makes it impossible for him to grow hair on any part of his body.

In addition, although some swabs had been retrieved from the crime scene, they were later rendered useless as a result of an error committed by the laboratory. With no physical evidence linking the defendant to the crime, I cannot characterize the evidence presented by the People as overwhelming proof of the defendant's guilt.

In light of the foregoing, it is my opinion that a new trial is warranted. Accordingly, I respectfully dissent.