People v Bravo (2024 NY Slip Op 51484(U))

[*1]

People v Bravo

2024 NY Slip Op 51484(U)

Decided on October 31, 2024

Criminal Court Of The City Of New York, Bronx County

Bowen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 31, 2024
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Segundo Naula Bravo, Defendant.

Docket No. CR-016054-22BX

Katerina Powers and Elizabeth Doty, Assistant District Attorneys, Bronx County, for the People 
Alyssa Harriston and Chloe Cabán, The Bronx Defenders, for Defendant

E. Deronn Bowen, J.

Summary
1. The defense application to preclude at trial evidence of statements purportedly made by nontestifying civilians is DENIED.
2. The People's application to present at trial evidence of statements purportedly made by nontestifying civilians is GRANTED FOR THE LIMITED NON-TESTIMONIAL PURPOSES of (1) completing the narrative of the scope of the police investigation and (2) explaining what, if any, effect the purported statements had on the investigation; but not for the statements' truth.
3. The court ORDERS that a limiting instruction be given to the jury in accordance with this decision and order.
On dates October 15-30, 2024, excepting prescheduled times off, defendant stood trial on charges of aggravated driving while intoxicated per se (Vehicle and Traffic Law § 1192 [2-a] [a]), driving while intoxicated per se (Vehicle and Traffic Law § 1192 [2]), common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]) and driving while ability impaired (Vehicle and Traffic Law § 1192 [1]). The following facts were uncontested at trial: 
• Defendant was arrested for a suspected DWI in the morning hours of September 11, 2022, after NYPD police officers observed him asleep while seated behind the steering wheel of a motor vehicle parked in a grassy area alongside the Bronx River Parkway;
• No prosecution witness observed defendant drive the vehicle;
• Also asleep in the parked vehicle were two other nontestifying civilians;[FN1]
• Police officers spoke with the civilians but did not obtain their pedigree information; and
• Neither defendant nor the civilians are fluent in English.
Pursuant to pretrial orders, only the English-speaking portions of video recordings admitted into evidence, such as police officer body-worn camera (BWC) footage, were played to the jury with sound. All non-English speech in any video recordings was muted.[FN2]
Neither party had provided pretrial notification to the court of an intent to call the civilians as trial witnesses, and neither testified (see CPL 245.20 [c]; 245.80 [1] [a]).
Due to a planned break in the trial schedule, after the conclusion of the evidence presentation on Thursday, October 24, 2024, the trial was adjourned to be continued on Monday, October 28, 2024. After the jurors were excused for the three-day weekend, the People made an oral application concerning NYPD Police Officer J.A., who is fluent in both Spanish and English, and would testify on Monday. The prosecution proffered that Officer J.A. was present at the location of the parked vehicle; had a conversation with the two civilians that was recorded on BWC footage; and had translated the civilians' purported statements into English, also recorded on the footage, for the benefit of non-Spanish-speaking officers. The prosecution requested permission to play for the jury, with sound, footage of Officer J.A. translating the civilians' purported statements into English. Non-English communication would remain muted on videorecorded exhibits played for the jury.
The defense counter-applied to preclude the English translations on Confrontation Clause grounds respecting the nontestifying civilians. With leave of the court, the parties filed supplemental briefs arguing this constitutional issue on Friday, October 25, 2024. The court informed the parties of its ruling by email in the early morning of Sunday, October 27, 2024, to allow the parties as much time as possible to prepare for Officer J.A.'s testimony on Monday. The court denied the defense preclusion application and granted the People's application for limited, non-testimonial purposes. The court now issues this decision and order reaffirming this [*2]determination and expounding on its reasoning therefor.
The People submitted, in part, that "the situation at hand is analogous to" People v Ko (15 AD3d 173 [2005]) and "creates a similar scenario like that of" People v Wilson (297 AD2d 607 [2002]). In both Ko and Wilson, the First Department found out-of-court, testimonial statements to have been admissible over Confrontation Clause objections. The court finds Ko and Wilson, as the People have presented them, to be, respectively, distinguishable and unpersuasive.
In Ko, the
"[d]efendant opened the door to the admission of the entire statement concerning the clothing found at the murder scene by raising the issue of the clothing in his opening statement and in seeking, in opposition to the People's in limine motion, leave to introduce the girlfriend's statement that the shirt found belonged to her. Once defendant insisted upon introduction of the portion of the statement regarding the girlfriend's ownership of the shirt, the entire statement became admissible because the admission of that portion of the statement, by itself, would misrepresent the meaning of the conversation" (15 AD3d at 174 [emphasis added]).
Here, however, there was never any concern that the defense intended to misrepresent portions of the civilians' purported statements while attempting to keep from the jury other, more incriminating portions. The defense wished to keep from the jury all civilian statements and all purported English translations.
Wilson predates the seminal Crawford v Washington (541 US 36 [2004]), as does its dicta "were we to review" the "Confrontation Clause claim, . . . we would reject it" (297 AD2d at 608). Moreover, as the Court of Appeals noted recently, "the Supreme Court has refined its Confrontation Clause analysis on numerous occasions since it decided Crawford in 2004" (People v Franklin, 42 NY3d 157, 162 [2024]). The court will go out on a limb and beg the First Department's forgiveness for its unwillingness to glean Confrontation Clause guidance from a one-page, pre-Crawford decision in this, the year of Crawford's 20th birthday.
The "Confrontation Clause focuses on ' "witnesses" against the accused—in other words, those who "bear testimony." ' Thus, to determine whether the defendant's confrontation rights [would be] implicated by introduction of the [civilians' statements], we ask whether the [statements were] 'testimonial' " (Franklin, 42 NY3d at 161, quoting Crawford, 541 US at 51). To aid the lower courts in conducting Confrontation Clause analysis in line with modern-day Supreme Court jurisprudence, the Court of Appeals elected recently to
"clarify that in ascertaining whether out-of-court statements are testimonial, courts should inquire, as the U.S. Supreme Court has instructed, 'whether in light of all the circumstances, viewed objectively, the "primary purpose" of the conversation was to "creat[e] an out-of-court substitute for trial testimony." ' When that standard is met, the statement should be deemed testimonial for purpose of the Confrontation Clause" (Franklin, 42 NY3d at 161, quoting Ohio v Clark, 576 US 237, 245 [2015] [quoting Michigan v Bryant, 562 US 344, 358 (2011) ] ).
Contrarily, statements are "not testimonial [if] they were made 'under circumstances objectively indicating that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency' " (Franklin, 42 NY3d at 163, quoting Davis v Washington, 547 US 813, 822 [2006]).
In this case, each civilian can be seen in BWC footage exiting the vehicle, walking and [*3]standing, all without requiring assistance. Officers testified that the civilians appeared intoxicated, but the officers described no other signs of physical distress. The civilians did not request medical attention, and the officers did not request it on their behalf. Officers testified that, following defendant's arrest, the civilians were given a ride to a nearby train station and dropped off. Under these circumstances, the "primary purpose of the" police questioning of the two civilians clearly was "to establish or prove past events potentially relevant to later criminal prosecution" (Hammon v Indiana, 547 US 813, 822 [2006]). The court, therefore, reaffirms its October 27, 2024, determination that the civilians' respective, purported statements are testimonial.
The prosecution's averment, that permitting them to call the civilians as testifying witnesses would negate the defense Confrontation Clause challenge, is certainly accurate (see Crawford, 541 US at 59 n 9; People v Smith, 201 AD3d 746, 747 [2022]; People v Rahman, 137 AD3d 523, 523-524 [2016]). Permitting this, however, would have inevitably resulted in the defense raising an article 245 complaint as, again, the civilians were not properly noticed as potential trial witnesses (see CPL 245.20 [c]; 245.80 [1] [a]). The court expressed to the parties that it had no interest in pivoting from a federal-constitutional controversy to a state-statutory controversy. The court, therefore, reaffirms its pretrial ruling barring the civilians from testifying.
Alternatively, the prosecution requested permission for the jury to hear the English translations of the civilians' purported statements to complete the narrative of the police investigation and to explain how the statements, as the officers understood them, affected the police investigation. The prosecution submitted in their Friday brief that the evidence "the People are seeking to elicit is not hearsay, but rather testimony elicited for the 'effect on the listener.' " The court reaffirms the prior determination that this argument is meritorious. First, the Supreme Court made clear in Crawford that the Confrontation "Clause [ ] does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted" (Crawford, 541 US at 59 n 9). This point of view is unchanged today (see Smith v Arizona, 602 US 779, 785 [2024] ["When a statement is admitted for a reason unrelated to its truth, we have held, the [Confrontation] Clause's role in protecting the right of cross-examination is not implicated"] [internal quotation marks omitted]; see also People v Garcia 25 NY3d 77, 86 [2015]; People v Coley, 219 AD3d 1673, 1673 [2023]; People v Speaks, 124 AD3d 689, 691-692 [2015]; People v Beato, 124 AD3d 516, 516 [2015]; People v Coleman, 67 Misc 3d 133[A], 2020 NY Slip Op 50482[U], *1 [App Term, 1st Dept [2020]).
Furthermore, as the People argued correctly, a major prong of the defense trial strategy has been to attack the police investigation as lackluster. The defense opening statement to the jury included the following:
"When two rookie officers saw [defendant] asleep in a parked car, they assumed he was the driver. They assumed that he had driven to that location. They did not stop to consider anything else. . . . They placed him under arrest and never questioned their initial assumptions. But, assumptions without facts, conclusions without evidence, is [sic] not proof beyond a reasonable doubt. . . . [Defendant] never operated that car.
. . . . [The officers] did not consider any other reasonable explanation. You will see for yourselves what the investigation amounted to. . . .
And most importantly, the cops never asked [defendant] if he drove the car. The cops never asked him who drove the car. The cops, they just made assumption[ ] after [*4]assumption. Now, the prosecution is going to ask you to make the same assumptions that the cops did that day. They are going to ask you to jump to conclusions. But, you, members of the jury, will not do that. You will listen to all of the evidence. You will see the videos. You will ask the questions that the cops did not. You will ask who drove the car."
The defense has maintained this line of attack on the quality of the police investigation during the cross-examination of police officer witnesses.
Due to the not unreasonable, defense strategy of casting aspersions on the NYPD investigation, the court found that it would have been an abuse of discretion to straitjacket the prosecution from presenting evidence to the jury concerning the very fact issue being raised by the defense.[FN3]
Therefore, the People's request to put before the trial jury evidence of the purported English translations of statements attributed to the civilians was proper—but only for the limited purposes of (1) completing the narrative of the scope of the police investigation and (2) explaining what, if any, effect the statements had on the investigation. The court held that the civilians' statements could not be presented for their purported truth. The court reaffirms its October 27, 2024, determination that utilizing this evidence for these two non-testimonial purposes does not contravene the Confrontation Clause. The court also reaffirms that utilizing this evidence for these two non-testimonial purposes is significantly probative and not unduly prejudicial to the defense.
In sum, the court reaffirms its October 27, 2024, determinations resolving the parties' cross-applications. The court DENIED the defense application to preclude at trial evidence of statements purportedly made by the non-testifying civilians. The court GRANTED the People's application to present such evidence at trial for the two limited, non-testimonial, nonhearsay purposes given in the preceding paragraph, but not for the statements' truth. The court, further, ORDERED that an appropriate limiting instruction be fashioned with the input of the parties, to be given to the jury prior to the introduction of any such evidence.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT
Dated: October 31, 2024
Bronx, New York
E. Deronn Bowen, J.C.C.

Footnotes

Footnote 1:At trial, the parties disputed whether defendant drove the vehicle to the location where NYPD police officers observed it parked. The court, therefore, elected during its consideration of this issue to refer to the individuals using the neutral term "civilians," instead of the presumptive term "passengers."

Footnote 2:The parties disputed at trial some of the Spanish-to-English translations involving defendant, the civilians and police officers. The defense also called into question whether defendant and the civilians were speaking Spanish with the officers or whether they spoke, in part or whole, the language Quechua. During motions in limine the parties made a joint, tripartite application to play for the jury the Spanish/Quechua spoken in video exhibits; to present competing written English translations; and to call competing Spanish-English translators as fact witnesses. The court denied this application (see People v Garcia, 27 AD3d 398, 399 [2006]). The parties then consented, with leave of the court, to play for the jury all videorecorded exhibit evidence with the non-English portions muted and only the English voiced. The parties were permitted to dispute through testimony and other evidence the witnesses' understanding of any non-English speech. The court did not permit interpreter testimony.

Footnote 3:In this sense, the spirit of People v Ko (15 AD3d 173 [2005]) does "haunt" the court's analysis here (pun intended a little bit).